1

2

3

4

5

6        **UNITED STATES DISTRICT COURT**

7        **EASTERN DISTRICT OF CALIFORNIA**

8

9   **NORTHERN CENTRAL**                    **CASE NO. 1:17-cv-01351-AWI-EPG**
    **DISTRIBUTING, INC. dba YOSEMITE**
10  **HOME DECOR,**
                                            **ORDER GRANTING IN PART AND**
11              **Plaintiff**               **DENYING IN PART PLAINTIFF'S**
                                            **MOTION FOR AN ORDER TO SHOW**
12              **v.**                      **CAUSE RE CONTEMPT**

13  **ROCKIE BOGENSCHUTZ, ROCKIE'S**        (Doc. No. 27)
    **CONTAINERS, LLC dba Y DÉCOR and**
14  **YOSEMITE DECOR,**

15              **Defendants**

16

17          Before the Court is Plaintiff Northern Central Distributing, Inc.'s motion for Defendants to

18  show cause why Defendants should not be held in contempt for violating the Court's prior order,

19  the "Stipulation and Order re Preliminary Injunction."[1] Doc. No. 21 (hereafter referred to as

20  "Stipulated Injunction").  The Stipulated Injunction ordered Defendants to refrain from certain

21  practices, including using certain stock keeping unit ("SKU") numbers, photographs, and the word

22  "Yosemite" in Defendants' business.  For the following reasons, the motion will be partially

23  granted.

24

25

26  ─────────────────
    [1] Plaintiff's motion is styled as a "motion for an order to show cause re contempt." Doc. No. 27.  Defendants
27  responded to the motion by filing an opposition, which argued that Defendants should not be held in contempt. See
    Doc. No. 38.  Defendants also responded to the Court's order instructing Defendants to file supplemental opposition
28  briefing, which Defendants did.  See Doc. Nos. 45, 48-49.  Therefore, with Defendants having been provided with
    notice of Plaintiff's motion and an opportunity to be heard (*i.e.*, to show cause), the Court treats Plaintiff's motion as a
    motion to hold Defendants in contempt.

Plaintiff Northern Central Distributing, Inc. dba Yosemite Home Décor ("YHD" or "Plaintiff") is a home décor supplier. So too is Defendant Rockie's Containers, LLC dba Y Décor ("Y Décor"). One of Y Décor's members is Defendant Rockie Bogenschutz.[2] Bogenschutz previously worked for YHD before starting and working for Y Decor. This case is largely about Y Décor and Bogenschutz (collectively "Defendants") using without authorization Plaintiff's protected property, including Plaintiff's photographs of home décor products and SKUs. In the home décor industry, an SKU is a unique combination of numbers and/or letters used to identify a seller's product.

Plaintiff filed a motion for preliminary injunction against Defendants pursuant to Fed. R. Civ. P. 65 that sought to enjoin Defendants from engaging in certain business practices, including copyright infringement. See Doc. No. 6-2. Specifically, Plaintiff's motion for preliminary injunction sought to enjoin Defendants from (1) using Plaintiff's unique SKUs to market, advertise, or sell home decor products; (2) using Plaintiff's photographs of home décor products; and (3) inserting Plaintiff's product manuals into Defendants' product shipments. See id. Attached to the motion for preliminary injunction were declarations and photographs that purportedly showed Defendants engaging in the aforementioned practices.

Additionally, Plaintiff's motion for preliminary injunction asserted that Bogenschutz violated a prior settlement agreement entered into between him and Plaintiff that required Bogenschutz to refrain from using the word "Yosemite" in the home décor industry. Id. at 2. The motion for preliminary injunction expressly stated, however, that "[b]y this motion, Plaintiff does not seek to enjoin Defendants from use of the name 'Yosemite,' as those actions are . . . currently subject to resolution by the honorable Howard Broadman (Ret.)." Id. at 3:1-3.

A hearing was scheduled on Plaintiff's motion for preliminary injunction, but the hearing never occurred. Instead, Defendants and Plaintiff stipulated to and proposed to the Court a "Stipulation re Preliminary Injunction and Order Thereon," which was essentially a proposed

---

[2] The publicly-available California Secretary of State Statement of Information (Form LLC-12) filing for Rockie's Containers, LLC, dated November 3, 2017, identifies Bogenschutz as a member. *See* https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=201529410014-23152080 (accessed August 17, 2018).

stipulated injunctive order.  The proposed stipulation was e-signed by counsel for Defendants and Plaintiff.  The Court accepted and adopted the proposed stipulation on January 8, 2018.  See Doc. No. 21; cf. Doc. No. 19 ("Stipulation Re Preliminary Injunction and Order Thereon").

The Stipulated Injunction orders Defendants to refrain from certain business practices, including the following:

1.  Immediately refrain from using any stock keeping unit, model, or product identifier ("SKU") which is identical to a SKU being used by Plaintiff on or in connection with the same, similar or competitive home fixture, furnishing or décor product.  Additionally, with the exception of the SKUs listed in Exhibit A, within 60 days of entry of this Order, Defendants will refrain from using any SKU which is similar to a SKU which is in active use by Plaintiff on or in connection with the same, similar or competitive home fixture, furnishing or décor product.  For the purpose of this provision, a SKU is "similar" if it has 3 or more consecutive numbers or letters that are the same as consecutive numbers or letters in a SKU being used by Plaintiff.  For the purpose of this Order Plaintiff may prove "active use" of a SKU by establishing Plaintiff has ordered, received, sold or distributed the referenced home fixture, furnishing or décor product on or after June 1, 2017.  Defendants shall act in good faith to comply with this provision within 60 days, but upon notice of any violation of this provision Defendants shall have 10 days to correct the violation.

2.  Immediately refrain from reproducing, distributing copies of, preparing derivatives of, displaying, or aiding others in reproducing, distributing copies of, preparing derivatives of or displaying, in whole or in part, any image, photograph, drawing, artwork, catalog, or product literature in which Plaintiff has valid and subsisting copyrights, and of which Defendant knows or has reason to know were prepared by, with, or for the exclusive benefit of, Plaintiff (the "Prohibited Creative Works").

4.  Immediately refrain from using, preparing, or distributing, in print or electronic from, any advertising or marketing material, product manuals, owner's manuals, installation guides, warranty guides, product packaging, and packaging materials, in connection with (i) the sale or advertising of home fixture, furnishing, or décor products and (ii) the performance or advertising of the service of distributing home fixture, furnishing, or décor products, that include any of Plaintiff's Prohibited Creative Works . . . .

5.  Immediately refrain from distributing within, or importing into, the United States any product having inserted into its packaging, or attached thereto, or in any other way distributed therewith, any of Plaintiff's product manuals, owner's manuals, installation guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite."

9.  Immediately refrain from using the "Yosemite" name in any manner whatsoever, including but not limited to Defendants' employment advertisements, fictitious business name filings, invoices, shipping materials, product manuals, bills of lading, shipping containers, or in any other manner whatsoever.

15.  Immediately recall or otherwise eliminate distribution of any of Defendants' products which contain Plaintiff's product manuals, owner's manuals, installation

guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite," and within 15 days provide Plaintiff with an inventory of product that has already been sold to the public containing Plaintiff's product manuals, owner's manuals, installation guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite," as well as evidence of the removal of all remaining product manuals, owner's manuals, installation guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite," from Defendants' product.

Doc. No. 21 ¶ 1-2, 4-5, 9, 15 (parentheticals in original).

The Stipulated Injunction also provides that sanctions, remedies, or penalties may be imposed for future violations of the Stipulated Injunction:

The parties stipulate and agree that in order to deter any further damage to Plaintiff's business, reputation and goodwill, the parties agree to the following measure of sanctions for the violations of this Order, in addition to any other remedies or penalties the Court deems just and proper for violations of this Court's Order:

a. $500 for each prospective violation of this ORDER by any Defendant or anyone acting in concert with any Defendant having notice of the injunction. Aradia Women's Health Center v. Operation Rescue, 929 F.2d 530, 532 (9th Cir. 1991) (prospective sanctions proper); Institute of Cetacean Research v. Sea Shepherd Conservation Soc., 774 F.3d 935, 950 (9th Cir. 2014) (party liable for contempt for encouraging or giving non-party means to violate injunction); and

b. An award of reasonable attorneys' fees and costs to Plaintiff for costs of enforcement of this ORDER upon application to the Court and upon proof of any material violation of this ORDER. Harcourt Brace Jovanovich Legal & Prof. Pub., Inc. v. Multistate Legal Studies, Inc., 26 F.3d 948, 953 (9th Cir. 1994) (attorney's fees appropriately awarded for civil contempt).

Id. at 5:4-18 (citations in original).

After the Court entered the Stipulated Injunction, Plaintiff and Defendants filed their joint scheduling report pursuant to Fed. R. Civ. P. 26(f). See Doc. No. 24. In the section of the report titled "Summary of Uncontested and Contested Facts," the report states that the parties do not dispute that Defendants used some of Plaintiff's SKUs and photographs:

The parties do not dispute that Defendants used the name "Yosemite" to compete with Plaintiff and engaged in conduct including using Plaintiff's unique SKU numbers and Plaintiff's photographs. The parties dispute whether Defendants' conduct as alleged in the complaint was considered wrongful or unlawful.

Id. at 2:23-28.

Sixty-five days after the Court issued the Stipulated Injunction, March 15, 2018, Plaintiff's counsel, Stephanie Borchers, emailed Defendants' counsel, Russell Ryan. In the email, Ms. Borchers said Defendants were violating the Stipulated Injunction because Plaintiff's counsel found multiple webpages displaying SKUs and photographs covered by the Stipulated Injunction. Ms. Borchers identified a few webpages that she claimed violated the Stipulated Injunction; some of the webpages were from y-décor.com and others were from third-party retail websites, including amazon.com and walmart.com. Ms. Borchers implied in her email that y-décor.com was a business website used and controlled by Defendants. Ms. Borchers said she would seek penalties for Defendants' violations of the Stipulated Injunction if the violations were not cured.

Eleven days later, March 26, 2018, Ms. Borchers emailed Mr. Ryan and wrote, "no changes to the website that I'm seeing." Doc. No. 27-3, at Ex. 5. In the email, Ms. Borchers identified another webpage from y-décor.com that purportedly displayed one of Plaintiff's photographs covered by the Stipulated Injunction. Ms. Borchers said she would pursue a motion for contempt if the photographs did not come down from the websites immediately. Ms. Borchers also acknowledged that Defendants may not control the content displayed on the third-party websites.

On the same day, Mr. Ryan injured his feet and legs while hiking near the Oregon coast on vacation. Mr. Ryan stated in his declaration that he underwent multiple surgeries shortly after the accident, received medical instructions to not bear weight on his legs and feet for approximately twelve weeks, and was prescribed with strong medications which "caused [him] to be unable to engage in any meaningful work or meet with clients for an extended period." Doc. No. 42 ¶ 2.

Mr. Ryan further stated he underwent another surgery for his injuries on April 4, 2018, in Fresno, California, and he stated that he was homebound for much of the next nine weeks, wheelchair bound until around June 10, 2018, and was not able to "regularly check [his] emails or correspondence for several weeks." Doc. No. 42 ¶¶ 2-3. Mr. Ryan also stated that due to his injuries, he was unable to speak with his client, Bogenschutz, between the time of the accident, March 26, 2018, and the filing of Plaintiff's motion to hold Defendants in contempt, May 8, 2018. There are approximately forty-three days between March 26, 2018, and May 8, 2018.

On April 4, 2018, Mr. Ryan emailed Ms. Borchers and explained his injuries. In the email, Mr. Ryan said he should be able to talk with Ms. Borchers the following week about Defendants' alleged violations to the Stipulated Injunction. Mr. Ryan also said he did much of his work remotely through a computer.

On April 6, 2018, Ms. Borchers emailed Mr. Ryan. In the email, Ms. Borchers said the issue of the violations was an issue that Bogenschutz needed to handle, not Mr. Ryan. Ms. Borchers said she was considering bringing a motion to hold Defendants in contempt.

Twenty days later, April 26, 2018, Ms. Borchers gave Mr. Ryan a letter that identified over 100 SKUs. In the letter, Ms. Borchers said the SKUs were being used by Defendants in violation of the Stipulated Injunction. Ms. Borchers said some of Plaintiff's photographs covered by the Stipulated Injunction were being used by Defendants on y-décor.com. Ms. Borchers said actual damages had been suffered by Plaintiff due to Defendants' violations of the Stipulated Injunction. Ms. Borchers said she would file in eleven days an application for an order to show cause why Defendants should not be held in contempt for violating the Stipulated Injunction.

Later that day, Mr. Ryan emailed Ms. Borchers. In the email, Mr. Ryan said he was just starting to do work since his accident and he would put as a priority the issue of the Defendants' alleged violations of the Stipulated Injunction. Mr. Ryan said he had not had a chance to speak with Bogenschutz since the day of Mr. Ryan's accident. Mr. Ryan said that the prior day, April 25, 2018, was his first day back to the office since his accident. Mr. Ryan said he was bound to a wheelchair for the next six weeks and would do the best he could to address the issue of Defendants' alleged violations of the Stipulated Injunction, but he also said his injuries were affecting him.

One week later, May 3, 2018, Mr. Ryan emailed Ms. Borchers. In the email, Mr. Ryan said he had been largely home-bound due to his injuries and had been able to go into the office only once since his accident, and that one visit was for a staff appreciation luncheon. Mr. Ryan asked Ms. Borchers to extend by ten days the deadline to address the alleged violations that Ms. Borchers identified in her letter from April 26, 2018. Mr. Ryan indicated he needed the additional ten days because he had been unable to meet with Bogenschutz.

The next day, May 4, 2018, Mr. Ryan emailed Ms. Borchers, following up on his earlier request for the ten-day extension. In the email, Mr. Ryan said the Stipulated Injunction required Plaintiff to give Defendants a list of Plaintiff's actively used SKUs. Mr. Ryan said he believed Plaintiff had not provided such a list to Defendants. Mr. Ryan asked Ms. Borchers to provide the list. Later that day, Ms. Borchers emailed Mr. Ryan, saying she would not extend more time to Defendants to address the alleged violations identified in her letter from April 26, 2018.

Three days later, May 7, 2018, a paralegal working for Ms. Borchers, Rita Bell, went online and took hundreds of screenshots of webpages that displayed SKUs purportedly covered by the Stipulated Injunction. The webpages came from websites such as y-décor.com, amazon.com, overstock.com, wayfair.com, homedepot.com, and walmart.com. Ms. Bell also took screenshots of webpages on y-décor.com that displayed photographs of lighting fixtures purportedly covered by the Stipulated Injunction.

The next day, May 8, 2018, Plaintiff filed its motion to hold Defendants in contempt for violating the Stipulated Injunction. In the motion, Plaintiff argued that the SKUs and photographs on the webpages that Ms. Bell took screenshots of on May 7, 2018,[3] were covered by the Stipulated Injunction. Plaintiffs argued that Defendants were responsible for the SKUs and photographs being displayed on the webpages. Attached to Plaintiff's motion was, amongst other things, a declaration from Ms. Bell and copies of the screenshots that she took of the SKUs and photographs on the multiple webpages.

On May 21, 2018, Mr. Ryan emailed Ms. Borchers and asked to continue the hearing on the motion to hold Defendants in contempt. In the email, Mr. Ryan said that since his accident and due to his injuries, he had gone into his office only on April 25, 2018, and May 16, 2018. Mr. Ryan said he had been able to do some work remotely but had been largely unable to meet with clients. Mr. Ryan said the only attorney at his firm capable of assisting him in responding to the motion to hold Defendants in contempt was his daughter, who was a first-year lawyer not qualified to assist him on the matter.

---

[3] Hereafter, when this order refers to the "screenshots," it means the screenshots taken by Ms. Bell on May 7, 2018.

The next day, May 22, 2018, Plaintiff and Defendants stipulated to continue by two weeks the hearing on the motion to hold Defendants in contempt. The stipulation stated that Mr. Ryan's "injuries are such that he needs additional time to prepare the opposition, and the Parties have agreed to a continuance of the hearing in order to allow this additional time." Doc. No. 33, at 2:3-5.

On July 2, 2018, Defendants filed an opposition to Plaintiff's motion to hold Defendants in contempt. See Doc. No. 38. Attached to the opposition was a twenty-three-page declaration from Bogenschutz and a four-page declaration from Mr. Ryan.

Plaintiff then filed a reply. See Doc. No. 43. The reply included declarations and attachments that raised factual issues not squarely raised in the motion to hold Defendants in contempt. On that basis, the Court ordered Defendants to file supplemental briefing addressing some of the issues raised in Plaintiff's reply. See Doc. No. 45. Defendants then filed supplemental briefing (see Doc. No. 48), which included another declaration from Bogenschutz. Finally, Plaintiff filed a response to Defendants' supplemental briefing. See Doc. No. 50.

**PLAINTIFF'S MOTION**

*Plaintiff's Argument*

Plaintiff argues that Defendants violated the Stipulated Injunction. Specifically, Plaintiff argues that after the entry of the Stipulated Injunction, Defendants: (1) committed at least 486 violations of the Stipulated Injunction by using identical or similar SKUs — identical or similar to the SKUs used by Plaintiff — on multiple websites, including Defendants' website, y-décor.com,[4] and third-party retail websites, such as amazon.com, overstock.com, homedepot.com, wayfair.com, and walmart.com; (2) committed four violations of the Stipulated Injunction by displaying four photographs covered by the Stipulated Injunction on Defendants' website, y-décor.com; and (3) committed two violations of the Stipulated Injunction by using the word "Yosemite" on two of Defendants' import shipments.

---

[4] With respect to the SKUs displayed on y-décor.com, Ms. Bell's screenshots showed sixty-seven SKUs displayed on sixty-seven webpages on y-décor.com — i.e., one SKU displayed per webpage.

Plaintiff contends that because of Defendants' foregoing 492 violations of the Stipulated Injunction, Defendants should pay Plaintiff $246,000 pursuant to the Stipulated Injunction, which provides for a $500 sanction per violation of the Stipulated Injunction.

Plaintiff also argues that Defendants should pay Plaintiff's attorney's fees and costs in bringing the motion to hold Defendants in contempt, plus $50,000 for every fifteen days that Defendants fail to comply with the Stipulated Injunction, beginning from the date that the Court enters an order granting Plaintiff's motion to hold Defendants in contempt.

Plaintiff also argues that it "suffered known actual damages in the form of lost sales as a result of Defendants' violations" because a customer canceled a contract with Plaintiff due to being confused by Defendants' use of one of Plaintiff's SKUs. As compensation for that alleged lost sale, Plaintiff claims that Defendants should pay $1,913 to Plaintiff, which is the amount of the lost sale.

Finally, Plaintiff maintains that Plaintiff "repeatedly notified Defendants of the existence of the various violations described above as a courtesy" and "Defendants have had an ample opportunity to correct these violations." Doc. No. 27-2, at 5:23-25.

*Defendants' Opposition*

Y Décor and Bogenschutz jointly filed an opposition to Plaintiff's motion. The opposition argues that Defendants should not be held in contempt for a number of reasons.

First, Defendants argue that with respect to SKUs displayed on third-party websites, Defendants do not control the content displayed on those third-party websites:

> Y Décor does not 'control' any third party seller websites, including ***all*** of those listed by Ms. Bell in her declaration such as Amazon.com, Homedepot.com, Overstock.com, Walmart.com and Hayneedle. Y Décor ***cannot*** make additions or revisions to any third party seller website; it only provides information to the third party sellers and they create and maintain pages for product sales over which Y Décor has absolutely no control.

Doc. No. 38:20-25 (emphasis in original). Further, in his declaration, Bogenschutz states that "[a]ll we can do is to send in price and SKU changes [to the third-party retailer websites], which we did at the time the preliminary injunction went into effect," Doc. No. 41, at 2:18-20, and "[i]t is not possible for Y Décor to force Amazon, Home Depot or other online retailers to remove the

items from their sites . . . ." Id. at 3:4-5. Bogenschutz also states in his declaration that "we sent SKU changes into Amazon in late December 2017 or early 2018." Id. at 2:20-21.

Second, Defendants argue that the SKUs displayed on y-décor.com as of May 7, 2018, did not violate the Stipulated Injunction because Defendants did not use that website for marketing and sales since the Stipulated Injunction went into effect. The opposition states,

> The SKUs in question that the plaintiff lists as being in violation of the preliminary injunction as they are found on Y-décor's old website [*i.e.*, y-décor.com] were only there for reference purposes only and ***not*** for marketing or sales to customers, so the references to older SKUs on that website are not be [*sic*] a violation of the preliminary injunction. . . . The fact that Ms. Bell observed these SKUs on Y-Décor's old website does not establish that Y Décor was selling these items and, in fact, Y Décor does not sell any items from that website and have not since before the preliminary injunction went into place. Further, that website does not even allow such transactions.

Doc. No. 38, at 18:18-21, 18:24-19:2 (emphasis in original).

Third, Defendants argue that a "2016 Agreement" entered into by the parties prior to this case carves out a caveat to the Stipulated Injunction which allows Defendants to use certain SKUs even if the SKUs are covered by the Stipulated Injunction.

Fourth, Defendants argue that with respect to the photographs displayed on y-décor.com as of May 7, 2018, Defendants "never knowingly used any product photographs owned by the plaintiff." Doc. No. 41, at 22:3-4.

Fifth, Defendants argue that Y Décor "does not ship under the name 'Yosemite Décor' and has no knowledge regarding such shipping containers being shipped under the name 'Yosemite Décor' and certainly did not order shipments in 2018 (or, for that matter, receive shipments in 2018) under the name 'Yosemite Décor.'" Id. at 22:22-25.

Sixth, Defendants argue that evidence does not exist of customer confusion caused by Defendants' alleged violations of the Stipulated Injunction, the alleged international shipments bearing the name "Yosemite," or Plaintiff's alleged ownership of the photographs that were displayed on y-décor.com.

Seventh, Defendants argue that they were not notified of the alleged violations identified in Plaintiff's motion until after the motion was filed. In a related vein, Defendants also argue that the

Court cannot grant the motion until after conducting an evidentiary hearing or trial on the issue of Defendants' contempt.[5]

*Legal Standard*

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 945 (9th Cir. 2014). When there has been contempt, a court can levy contempt sanctions pursuant to its inherent powers. Cooke v. United States, 267 U.S. 517, 539 (1925). The inherent powers of federal courts are those that "are necessary to the exercise of all others." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)). "The district court has wide latitude in determining whether there has been contemptuous defiance of its order." Hook v. Arizona Dep't of Corr., 107 F.3d 1397, 1403 (9th Cir. 1997). "The most common utilization of inherent powers is a contempt sanction levied to 'protect the due and orderly administration of justice' and 'maintain' the authority and dignity of the court." Primus Auto. Fin. Servs., Inc., 115 F.3d at 648 (quoting Cooke, 267 U.S. at 539).

In addition to the Court's inherent powers, Congress gave the Court the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401; see also United States v. Powers, 629 F.2d 619, 624 (9th Cir. 1980).

For issuance of a contempt order to be proper, the party alleging contempt must establish "(1) that [the accused party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth., 564 F.3d 1115, 1123 (9th Cir. 2009) (citing In re Dual–Deck Video Cassette Recorder Antitrust Litig., 10 F.3d

---

[5]  In his declaration, Bogenschutz stated that "I only sell products and goods through [Y Décor] and not individually, so I do not understand why I have been personally named as a defendant." Doc. No. 41, at 1:25-27. However, because Defendants' arguments and citations did not address the issue of whether Bogenschutz is shielded from liability, the Court does not make any findings on the issue here.

693, 695 (9th Cir. 1993)).  Additionally, the violated order must be "specific and definite." <u>FTC v. Enforma Natural Prods., Inc.</u>, 362 F.3d 1204, 1211 (9th Cir. 2004).

"A contemnor in violation of a court order may avoid a finding of civil contempt only by showing it took all reasonable steps to comply with the order." <u>Kelly v. Wengler</u>, 822 F.3d 1085, 1096 (9th Cir. 2016).  "If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." <u>Gen. Signal Corp. v. Donallco, Inc.</u>, 787 F.2d 1376, 1379 (9th Cir. 1986) (citations omitted).  But "[f]ailure to comply need not be intentional" in order for a contempt order to be proper. <u>Id.</u> at 1379 (citing <u>McComb v. Jacksonville Paper Co.</u>, 336 U.S. 187, 191 (1949); <u>Perry v. O'Donnell</u>, 759 F.2d 702, 705 (9th Cir. 1985)).

Additionally, an alleged contemnor may defend against a finding of contempt by demonstrating a present inability to comply.  <u>See</u> <u>United States v. Ayres</u>, 166 F.3d 991, 994 (9th Cir. 1999) (citing <u>United States v. Rylander</u>, 460 U.S. 752, 757 (1983)).  The burden of showing the inability to comply falls on the alleged contemnor.  <u>National Labor Relations Board v. Trans Ocean Export Packing, Inc.</u>, 473 F.2d 612, 616 (9th Cir.1973) ("[O]ne petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply."). "Ability to comply is the crucial inquiry, and a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey." <u>Ayres</u>, 166 F.3d at 994 (citations omitted).

*Discussion*

I.      Contempt

The Court concludes that Defendants violated the Stipulated Injunction beyond substantial compliance even though Defendants had the ability to comply.

1.      SKUs

The Stipulated Injunction orders Defendants to refrain from using SKUs that are "identical" or "similar" to the SKUs used by Plaintiff.  Specifically, the Stipulated Injunction states that Defendants shall "immediately refrain from using" identical SKUs and "refrain from using" similar SKUs "within 60 days of entry of [the Stipulated Injunction]."  Doc. No. 21 ¶ 1.

The Stipulated Injunction also states that "upon notice of any violation [of SKUs] Defendants shall have 10 days to correct the violation." Id.

### a.    Third-Party Websites

With respect to the SKUs displayed on the third-party websites (*i.e.*, websites other than y-décor.com), the Court has not been provided with clear and convincing evidence that Defendants used or controlled the SKUs on those websites as of or after May 7, 2018 — the day that Ms. Bell observed and took screenshots of the SKUs on the websites. Although Plaintiff's motion claims that the SKUs on the third-party websites existed because of Defendants, Bogenschutz said in his declaration that he contacted the third-party retailers before the Stipulated Injunction went into effect and requested that the third-party retailers change the SKUs. Plaintiff has not presented clear and convincing evidence to show otherwise. Additionally, Plaintiff has not presented any evidence that Defendants were responsible for the SKUs displayed on the third-party websites as of May 7, 2018.[6] Therefore, based on the evidence before it, the Court does not find that Defendants used the SKUs on the third-party websites in violation of the Stipulated Injunction. See Ayres, 166 F.3d at 994 (noting that an alleged contemnor may defend against a finding of contempt by demonstrating a present inability to comply).

### b.    Y-décor.com

In his declaration, Bogenschutz conceded that y-décor.com is Defendants' website. Further, Defendants did not dispute that the sixty-seven SKUs on y-décor.com (as shown in Ms. Bell's screenshots) were in fact displayed on y-décor.com as of May 7, 2018. Bogenschutz effectively admitted that the SKUs were displayed on y-décor.com as of May 7, 2018, when he said that he caused many of the SKUs to be removed from y-décor.com following the filing of the

---

[6] Without providing much detail or convincing supporting evidence, Plaintiff argues that Defendants control content on one or more of the third-party websites. The Court cannot make this finding. While the Court understands that certain third-party retail websites, such as amazon.com, allow sellers to list, describe, and sell their products on such websites, Plaintiff has not provided the Court with clear and convincing evidence that the SKUs on the third-party websites were "used" by or controlled by Defendants. Further, in Plaintiff's reply, Plaintiff appears to abandon its argument concerning the SKUs displayed on at least one third-party website, amazon.com. See Doc. No. 43, at 11:28-12:3 ("Accordingly, Plaintiff respectfully requests this Court order the Defendants to immediately restrain from using Plaintiff's SKUs and pay sanctions, excluding the violations occurring on Amazon, for their continued use of Plaintiff's SKUs and copyrighted photographs.").

1   Plaintiff's motion to hold Defendants in contempt.  Further, Defendants did not dispute that the

2   sixty-seven SKUs were identical or similar to Plaintiff's actively used SKUs.

3       Defendants argue that the sixty-seven SKUs on y-décor.com did not violate the Stipulated

4   Injunction because the SKUs were used by Defendants only for "reference" purposes, not for sales

5   or marketing.  Doc. No. 38, at 9:18-21.  While that characterization may be true, it has little

6   relevance to the Stipulated Injunction.  The Stipulated Injunction does not carve out a caveat that

7   allows Defendants to use the SKUs for reference purposes — especially when the use occurs on a

8   publicly-available website that consumers and other market participants can easily access.  Rather,

9   the Stipulated Injunction orders Defendants to refrain from any commercial use of the SKUs.  See

10  Doc. No. 21 ¶ 1.  Plaintiff's motion for preliminary injunction — which was the genesis of the

11  Stipulated Injunction — focused on the marketplace confusion that was allegedly caused by

12  Defendants using Plaintiff's SKUs.  That confusion can arise even from Defendants using the

13  protected SKUs for "reference" purposes on y-décor.com.[7]  For this reason, the Stipulated

14  Injunction plainly states that Defendants shall "refrain from using" the SKUs.

15      The Stipulated Injunction does make a distinction between SKUs that are "similar" or

16  "identical" to the SKUs used by Plaintiff.  See id.  But here, that distinction is not terribly

17  important with respect to the sixty-seven SKUs found by Ms. Bell.  Even assuming all sixty-seven

18  SKUs were "similar" (as opposed to "identical"), the use of the SKUs on y-décor.com still

19  violated the Stipulated Injunction.  First, the Stipulated Injunction covers SKUs that are "similar"

20  to Plaintiff's "active[ly] used" SKUs.  Id.  The Stipulated Injunction says that "active use" may be

21  shown by "establishing Plaintiff has ordered, received, sold or distributed the referenced home

22  fixture, furnishing or décor product on or after June 1, 2017."  Id.  Plaintiff has sufficiently shown

23  that that the SKUs found by Ms. Bell on y-décor.com were similar to (if not identical to) SKUs

24  "actively used" by Plaintiff.  For example, a customer service manager for Plaintiff, Lynae

25  Edralin, said in her declaration that the sixty-seven SKUs were either identical or similar to

26  Plaintiff's actively used SKUs.  Doc. No. 27-5 ¶ 4; id. at Exs. 1-2.  Second, the Stipulated

27

28  [7] Defendants' opposition claims that there has been no evidence presented of customer confusion.  Arguably, there
    has.  Regardless, the Stipulated Injunction enjoins the "use" of the covered SKUs and photographs regardless of
    whether the use causes customer confusion.  See Doc. No. 21.

Injunction gave Defendants a sixty-day grace period to change "similar" SKUs and an additional ten-day notice period to change "similar" and "identical" SKUs. By the time Ms. Bell observed the sixty-seven SKUs on y-décor.com on May 7, 2018, the grace period for "similar" SKUs and the notice period had expired.[8]

Bogenschutz also claims in his declaration that many of the SKUs on y-décor.com were changed after the filing of Plaintiff's motion to hold Defendants in contempt, but this claim cuts against Defendants. The claim highlights that Defendants failed to make the changes in time and establishes that Defendants controlled and had the ability to change the SKUs displayed on y-décor.com.

Defendants also point to Y-Décor's "current" website, AAdecor.com, and claim that they have used that website since before the entry of the Stipulated Injunction. See Doc. No. 38, at 9:12-16. But this claim does not change the fact that Defendants used, controlled, and displayed contumacious SKUs on y-décor.com as of May 7, 2018.

Defendants refer to a "2016 Agreement" that was allegedly entered into by Bogenschutz and Plaintiff prior to this case, and Defendants suggest that the 2016 Agreement carves out a caveat to the Stipulated Injunction which allows Defendants to use certain SKUs even if the SKUs are covered by the Stipulated Injunction. Defendants have failed to persuade or explain to the Court how the 2016 Agreement creates a caveat or exception to the Stipulated Injunction. The Stipulated Injunction — which was negotiated, drafted, and proposed to the Court by Defendants and Plaintiff — says nothing of the 2016 Agreement. Therefore, the Court rejects Defendants' 2016 Agreement arguments insofar as the arguments relate to the SKU violations of the Stipulated Injunction.

Defendants also claim that they were not notified of the SKU violations until after Plaintiff filed the motion to hold Defendants in contempt. This claim is unpersuasive. First, Ms. Borchers repeatedly raised the issue of Defendants' violations with Mr. Ryan. For example, on March 15, 2018, Ms. Borchers raised the issue in an email to Mr. Ryan by explaining that there were "SKU's

---

[8] Plaintiff's counsel's letter from April 26, 2018, began the running of the ten-day notice period.

in violation of the order" on certain webpages on y-décor.com. Doc. No. 27-3. Ms. Borchers invited Mr. Ryan to call and discuss the matter. Ms. Borchers warned that Plaintiff would perhaps "seek the penalties set forth in the court's order to . . . eliminate the other violations." Id. The email was sent eleven days before Mr. Ryan's accident and fifty-four days before Plaintiff filed the motion to hold Defendants in contempt. About three weeks later, on April 6, 2018, Ms. Borchers again emailed Mr. Ryan about the alleged violations. About three weeks after that, on April 26, 2018, Ms. Borchers provided Mr. Ryan with a letter that identified the SKUs that were allegedly being used by Defendants in violation of the Stipulated Injunction. The letter stated that contempt proceedings would be moved for in eleven days. Thus, there is no question that Ms. Borchers repeatedly raised the issue of the SKUs displayed on y-décor.com and future contempt proceedings well before Plaintiff filed the motion to hold Defendants in contempt.

Defendants also contend that they were not put on notice of the violations even though their counsel was notified. "[A]n attorney is his client's agent, and that the agent's knowledge is imputed to the principal even where . . . the agent does not actually communicate with the principal, who thus lacks actual knowledge of the imputed fact. This principal applies to the attorney-client relationship." Herman v. Los Angeles Cty. Metro. Transportation Auth., 71 Cal. App. 4th 819, 828 (1999) (citations omitted); see also Seacall Dev., Ltd. v. Santa Monica Rent Control Bd., 73 Cal. App. 4th 201, 204–05 (1999) ("As a general rule, however, the negligence of an attorney is imputed to the client."); Powell v. Goldsmith, 152 Cal. App. 3d 746, 750 (1984) ("As was stated in Northern Natural Gas Co., v. Superior Court, 64 Cal. App. 3d 983, 992 (1976), 'an agent is under a duty to inform his principal of matters in connection with the agency which the principal would desire to know about. Even if he fails to do so, the principal will in most cases be charged with such notice. As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.'").

As already discussed, Mr. Ryan was notified of the alleged violations before the motion was filed. The Court understands that Mr. Ryan suffered serious injuries on March 26, 2018, that affected to some degree his ability to work. But the evidence shows that Mr. Ryan had the ability

— before Plaintiff filed the motion — to reach out to his clients to discuss the alleged violations. For example, Mr. Ryan had the ability to repeatedly email Ms. Borchers on and after April 4, 2018, concerning the alleged violations to the Stipulated Injunction. Mr. Ryan also had the ability to email Ms. Borchers while Mr. Ryan was away from his office.[9] Mr. Ryan also had the ability to visit his office on April 25, 2018, to attend a staff appreciation luncheon. In light of these facts, the Court rejects the argument that Defendants were not put on notice of the violations.

In sum, the sixty-seven SKUs displayed on y-décor.com as of May 7, 2018, constitute sixty-seven violations of the Stipulated Injunction.

    2.    Photographs

With respect to the four photographs of the lighting fixtures that were allegedly "taken from Plaintiff's 2017 product catalog" and displayed on y-décor.com as of May 7, 2018, the Stipulated Injunction states in Paragraph 2 that Defendants shall:

> 2.  Immediately refrain from reproducing, distributing copies of, preparing derivatives of, displaying, or aiding others in reproducing, distributing copies of, preparing derivatives of or displaying, in whole or in part, any image, photograph, drawing, artwork, catalog, or product literature in which Plaintiff has valid and subsisting copyrights, and of which Defendant knows or has reason to know were prepared by, with, or for the exclusive benefit of, Plaintiff (the "Prohibited Creative Works").

Doc. No. 21 ¶ 2 (parenthetical in original).

In Paragraph 4, the Stipulated Injunction identifies certain content encompassed by the term, "Prohibited Creative Works," including the photographs contained in YHD's 2017 Catalog, so long as the photographs are not manufacturer photographs:

> c. The 2017 Photographs (as defined in the Complaint, but excluding any photographs not created by or at the direction of Plaintiff, i.e., manufacturer photographs);
>
> . . . .
>
> e. The 2017 Catalog or any image, photograph, drawing, artwork contained therein (as defined in the Complaint but excluding any photographs not created by or at the direction of Plaintiff, i.e., manufacturer photographs) . . . .

---

[9]  Copies of several email correspondences between Mr. Ryan and Ms. Borchers were provided to the Court. The Court observes that on at least one of Mr. Ryan's emails, the email signature stated that the email was sent from Mr. Ryan's iPhone.

Id. ¶ 4.

Bogenschutz declared that he received the photographs from the manufacturer of the lighting fixtures:

> Y Décor has never knowingly used any product photographs owned by plaintiff. Y Décor takes its own product photographs or obtains photographs from manufacturers. Y Décor received the photos referenced in the declaration of Lynae Edralin . . . from the general manager of the manufacturer Z Alba (also known as Scullume) who is known as "Cap" and was told that these were manufacturer photos. . . . Both Y Décor and the plaintiff purchase products such as the lights depicted in Exhibits 3 and 4 of Ms. Edralin's declaration from the same manufacturers who provide stock photographs for use by its customers, including Y Décor and the plaintiff.

Doc. No. 41 ¶ 15.

Therefore, based on the evidence before it,[10] the Court is not convinced that the photographs of the lighting fixtures are covered by the Stipulated Injunction, which expressly excludes manufacturer photographs.

Additionally, another issue relevant to Paragraph 2 of the Stipulated Injunction is whether Defendants "kn[ew] or ha[d] reason to know [the photographs] were prepared by, with, or for the exclusive benefit of, Plaintiff," which is required in order for the photographs to be covered by Paragraph 2 of the Stipulated Injunction. Doc. No. 21 ¶ 2. Based on the foregoing statement from Bogenschutz's declaration that the photographs were received from the manufacturer, the Court is not convinced that Defendants knew or had reason to know the photographs were "prepared by, with, or for the exclusive benefit of" Plaintiff.

Thus, the Court does not conclude that Defendants violated the Stipulated Injunction with respect to the photographs of the lighting fixtures.

### 3. "Yosemite"

The Stipulated Injunction orders Defendants to not use the word "Yosemite" on or with Defendants' shipments:

> 5. Immediately refrain from distributing within, or importing into, the United States any product having inserted into its packaging, or attached thereto, or in any

---

[10] Plaintiff has not presented the Court with clear and convincing evidence that the photographs were not from the manufacturer. Plaintiff argues that it filed copyright applications for registration of the photographs with the United States Copyright Office in September 2017, but that does not answer the question of whether the photographs were created by or at the direction of Plaintiff.

other way distributed therewith, any of Plaintiff's product manuals, owner's manuals, installation guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite."

9. Immediately refrain from using the "Yosemite" name in any manner whatsoever, including but not limited to Defendants' employment advertisements, fictitious business name filings, invoices, shipping materials, product manuals, bills of lading, shipping containers, or in any other manner whatsoever.

15. Immediately recall or otherwise eliminate distribution of any of Defendants' products which contain Plaintiff's product manuals, owner's manuals, installation guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite," and within 15 days provide Plaintiff with an inventory of product that has already been sold to the public containing Plaintiff's product manuals, owner's manuals, installation guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite," as well as evidence of the removal of all remaining product manuals, owner's manuals, installation guides, or warranty guides, or any material attached to or included with Defendants' product that uses the name "Yosemite," from Defendants' product.

Doc. No. 21 ¶¶ 5, 9, 15.

Ms. Edralin said in her declaration that she "received an alert from its international trade database that two separate shipping containers were being imported in to the United States under the name "YOSEMITE DÉCOR." Ms. Edralin said that she determined that the shipments were for Defendants based on the consignee address and shipper information. Doc. No. 27-5 ¶ 8. Ms. Edralin also said that "containers under the name 'Yosemite Décor' entered the United States for shipment to what I know to be Y Décor's warehouse address[es]" at specific addresses in Springdale, Arkansas or Fresno, California on "May 7, 14, 20, 28, and June 11," 2018. Doc. No. 43-2 ¶ 4.

However, Bogenschutz said in his declaration that Defendants stopped using the name "Yosemite" since the entry of the Stipulated Injunction. Further, Bogenschutz stated that he discovered that one of his suppliers, TopHome Stainless Steel Product, had shipped to Defendants using the word "Yosemite," but that was a mistake of the supplier, not Defendants. Bogenschutz provided the Court with copies of emails exchanged between Bogenschutz and the supplier in which the supplier appears to acknowledge the mistake. See Doc. 49-3. Thus, based on the evidence before it, the Court does not conclude that Defendants violated the Stipulated Injunction

with respect to the word "Yosemite" being displayed on the shipments identified in Plaintiff's motion.[11]

## II.    Due Process for Contempt Order

Defendants argue that Plaintiff's motion cannot be granted without the Court first conducting an evidentiary hearing.  The Court disagrees.

"[C]ivil contempt 'may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.'" United States v. Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994).  "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.  Neither a jury trial nor proof beyond a reasonable doubt is required." Bagwell, 512 U.S. at 827.  The Ninth Circuit has said that a "district court ordinarily should not impose contempt sanctions solely on the basis of affidavits." Peterson v. Highland Music, Inc., 140 F.3d 1313, 1324 (9th Cir. 1998).  And the Supreme Court has stated that "[f]or a discrete category of indirect contempts, . . . civil procedural protections may be insufficient" and "[c]ontempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding." Bagwell, 512 U.S. at 833–34.

Nonetheless, the Ninth Circuit has repeatedly held "that finding a party in civil contempt without a full-blown evidentiary hearing does not deny due process of law to a contemnor." Ayres, 166 F.3d at 995 (citations omitted).  This is particularly true where the contempt "involve[es] *discrete, readily ascertainable acts*, such as turning over a key or payment of a judgment." Bagwell, 512 at 833–34 (emphasis added).  See also Ayres, 166 F.3d at 995 ("Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required.  Thus civil contempt 'may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.'") (citing Bagwell, 512 U.S. at 827, 831); Thomas, Head and Greisen Employees Trust v. Buster, 95 F.3d 1449, 1458 (9th Cir. 1996) (noting

---

[11]  Some of the declarations in support of Plaintiff's motion raise the issue of product manuals bearing the name "Yosemite" being included in Y Décor's shipments.  Because the issue was not raised in YHD's supporting points and authorities (and touched on only tangentially in the reply), the Court does not tackle the issue here.

that despite the lack of an evidentiary hearing, the "parties had ample notice and an opportunity to respond to the possibility that the court would find them in contempt").

In Ayres, for example, the Ninth Circuit affirmed the district court's contempt sanctions — which were issued without an evidentiary hearing or trial — where notice was given, briefing was submitted, and the "issue of contempt was effectively uncontroverted." United States v. Ayres, 166 F.3d 991, 995–96 (9th Cir. 1999). The Ninth Circuit explained that "where 'the affidavits offered in support of a finding of contempt are *uncontroverted,* we have held that a district court's decision not to hold a full-blown evidentiary hearing does not violate due process.'" Ayres, 166 F.3d at 995 (quoting Peterson v. Highland Music, Inc., 140 F.3d 1313, 1324 (9th Cir. 1998)) (emphasis in original); see also Thomas, Head and Greisen Employees Trust v. Buster, 95 F.3d 1449, 1459 (9th Cir. 1996); Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998, 1004–05 (9th Cir. 2004).

Here, Defendants were provided with notice of Plaintiff's motion and an opportunity to be heard. Defendants submitted to the Court a sixteen page memorandum of points and authorities in opposition to Plaintiff's motion (see Doc. No. 38); a twenty-four page declaration from Bogenschutz in opposition to the motion, which included fourteen pages of exhibits (see Doc. No. 41); a four page declaration from Mr. Ryan in opposition to the motion, which included eleven pages of exhibits (see Doc. No. 42); a nine page supplemental memorandum of points and authorities in opposition to the motion (see Doc. No. 48); and a six page supplemental declaration from Bogenschutz in opposition to the motion, which included twenty pages of exhibits (see Doc. No. 49). This briefing and evidence from Defendants constituted an opportunity for Defendants to be heard.

The Court considered Defendants' briefing and evidence, as well as the briefing and evidence from Plaintiff. Based on that briefing and evidence alone, the Court finds that the issue of Defendants' contempt with respect to the sixty-seven SKUs is a "discrete, readily ascertainable act[]," Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 833–34 (1994), that is "uncontroverted." Ayres, 166 F.3d at 995. Ms. Bell said in her declaration that she observed the contumacious SKUs displayed on Defendants' website on May 7, 2018. Doc. No. 28 ¶ 1.

Attached to Ms. Bell's declaration were copies of the screenshots of the SKUs displayed on y-décor.com.  Similarly, Ms. Edralin said in her declaration that she also "observed several instances of [Defendants] using SKUs that are identical or similar to those used by YHD." Doc. No. 27-5 ¶ 4.  Ms. Edralin's declaration attached an exhibit that listed the "SKUs [Ms. Edralin] observed Defendants using that are identical to those used by [Plaintiff]" and "similar to those used by [Plaintiff]." Id.

In the briefing and evidence submitted by Defendants, Defendants did not dispute that the sixty-seven SKUs were displayed on y-décor.com on May 7, 2018.  Defendants did not dispute that Defendants were responsible for the SKUs on y-décor.com as of May 7, 2018.  Defendants did not dispute that Defendants were capable of removing the SKUs from y-décor.com. Defendants did not refute that the SKUs were identical to or similar to the SKUs actively used by Plaintiff.  Instead, Defendants argued that the SKUs did not violate the Stipulated Injunction because the SKUs were only used for reference purposes, but, as explained above, this argument is unavailing.

Thus, based on the briefing and evidence submitted to the Court, it is uncontroverted that: (1) Defendants used and displayed the sixty-seven SKUs on y-décor.com as of May 7, 2018; (2) the SKUs were protected by the Stipulated Injunction; and (3) Plaintiff's counsel provided Defendants' counsel with notice of the violations of the Stipulated Injunction.  Conducting an evidentiary hearing will not change any of the foregoing uncontroverted facts.[12]  If Defendants had evidence to controvert any of the foregoing facts, then Defendants should have raised the evidence in their briefing and affidavits.

III.  Sanctions

Plaintiff argues that Defendants should be ordered to pay a fine of $246,000 for committing 492 violating of the Stipulated Injunction (*i.e.*, $500 per violation).  The Stipulated Injunction states that the Court may order sanctions in the amount of "$500 for each prospective violation" of the Stipulated Injunction, with the purpose of the sanctions being to "deter any

_____

[12]  The Court finds the facts about the SKUs on y-décor.com uncontroverted even when accepting Defendants' assertions as true.

22

further damage to Plaintiff's business, reputation and goodwill." Doc. No. 21, at 5. The Stipulated Injunction also says the Court may order additional "remedies or penalties the Court deems just and proper" for violations of the Stipulated Injunction. Id.

Beyond what the Stipulated Injunction says, the Court has authority to order remedial sanctions and coercive fines for civil contempt. See Shell Offshore Inc. v. Greenpeace, Inc., 815 F.3d 623, 628–30 (9th Cir. 2016) ("A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'") (citing United States v. United Mine Workers of Am., 330 U.S. 258, 303 (1947)); Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4, 721 F.3d 1122, 1130 (9th Cir. 2013). "Because civil compensatory sanctions are remedial, they typically take the form of unconditional monetary sanctions; whereas coercive civil sanctions, intended to deter, generally take the form of conditional fines." Shell Offshore Inc., 815 F.3d at 628–30.

"If the award is both compensatory and coercive the district court should specify the amount awarded under each theory based on the above standards and split payment of the award between [the complainant] and the court accordingly." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986). "Moreover, in determining how large a coercive sanction should be[,] the court should consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." Donallco, Inc., 787 F.2d at 1380 (citations omitted). "If the fine, or any portion of the fine, is coercive, it should be payable to the court, not [the complainant]." Id.

Here, the Stipulated Injunction, including the provision for "$500 for each prospective violation," was stipulated to and proposed to the Court by Defendants and Plaintiff. In some ways, the Stipulated Injunction is akin to a settlement agreement between Defendants and Plaintiff because the Stipulated Injunction was negotiated, drafted, and stipulated to by the parties. See Fed. Trade Comm'n v. Enforma Nat. Prod., Inc., 362 F.3d 1204, 1218 (9th Cir. 2004) ("As a consent decree is no more than a settlement that contains an injunction, the same rule should apply to a stipulated preliminary injunction, which is essentially a proposed injunction that reflects a

temporary settlement.") (citations omitted). For the same reason, the Stipulated Injunction is also akin to a consent decree, which is a "court decree that all parties agree to." *Decree*, Black's Law Dictionary (10th ed. 2014).

As it pertains to Plaintiff's motion, the $500-per-violation provision of the Stipulated Injunction is capable of serving remedial purposes. See Doc. No. 21, at 5:4-5 (". . . in order to deter any further damage to Plaintiff's business, reputation and goodwill . . . ."). The provision imitates a liquidated damages provision in a contract, which is a "provision that determines in advance the measure of damages if a party breaches the agreement." *Liquidated-Damages Clause*, Black's Law Dictionary (10th ed. 2014). Cf. Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1340 (9th Cir. 1981) (noting that the validity of a liquidated damages provision in a consent decree is not determined under state contract law).

In light of the fact that the Plaintiff and Defendants agreed to the $500-per-violation provision, the Court finds that $500 per violation is an appropriate remedial award to Plaintiff for Defendants' sixty-seven violations of the Stipulated Injunction, for a total award of $33,500. See Nehmer v. U.S. Dep't of Veterans Affairs, 494 F.3d 846, 860 (9th Cir. 2007) ("It is well established that the district court has the inherent authority to enforce compliance with a consent decree that it has entered in an order, to hold parties in contempt for violating the terms therein, and to modify a decree."); id. ("That the district court preserves such inherent authority presupposes that it, and not a party before it, is the principal and proper arbiter with the responsibility to interpret the decree and oversee the litigation. . . . [A] party . . . cannot dictate the meaning of the decree to the court or relieve itself of its obligations under the decree without the district court's approval."); S.E.C. v. Randolph, 736 F.2d 525, 528 (9th Cir. 1984) ("The use of consent decrees encourages informal resolution of disputes, thereby lessening the risks and costs of litigation. A consent decree offers more security to the parties than a settlement agreement where the only penalty for failure to abide by the agreement is another suit.") (citations omitted); Plough, Inc. v. Kreis Labs., 314 F.2d 635, 639 (9th Cir. 1963) ("A consent judgment was entered into by the parties. We are required to and do respect it, and we are bound, as are the parties to it, by the law of the case."); United States v. McAdam, 599 F. App'x 305–306 (9th Cir. 2015) ("The

district court awarded liquidated damages to the United States under the terms of the consent decree, which provided for liquidated damages not to exceed $80,000 in any calendar year for failure to comply. The district court did not abuse its discretion by using an amount negotiated by the parties as compensation for McAdam's continued contemptuous conduct.").

IV.    <u>Attorney's Fees and Costs</u>

Plaintiff argues that it should be awarded its attorney's fees and costs pursuant to the Stipulated Injunction, which says that attorney's fees and costs incurred in enforcing the Stipulated Injunction may be awarded to Plaintiff. Doc. No. 21, at 5. "Attorneys' fees frequently must be expended to bring a violation of an order to the court's attention." <u>Perry v. O'Donnell</u>, 759 F.2d 702, 705 (9th Cir. 1985). Accordingly, the Ninth Circuit has said "the trial court should have the discretion to analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure." <u>Id.</u>; <u>see also</u> <u>Biocell Labs., Inc. v. Biocell Research Labs., Ltd.</u>, 85 F.3d 634 (9th Cir. 1996); <u>Donovan v. Burlington N., Inc.</u>, 781 F.2d 680, 682 (9th Cir. 1986).

The attorney's fees and costs provision in the Stipulated Injunction was designed to "deter any further damage to Plaintiff's business, reputation and goodwill." Doc. No. 21, at 5. Thus, the attorney's fees provision is capable of serving both remedial and coercive purposes. Here, like with the $500-per-violation provision, the Court finds that awarding Plaintiff its reasonable attorney's fees and costs is an appropriate remedial award to Plaintiff. The Court orders Plaintiff to file by September 4, 2018, a memorandum of fees and costs with supporting affidavits concerning Plaintiff's fees and costs expended in relation to Plaintiff's motion to hold Defendants in contempt. The memorandum should be mindful that the motion is granted only in part and the applicable rate for attorney's fees is the prevailing rate for comparable attorneys in the "community." <u>See</u> <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1110 (9th Cir. 2014). Defendant may file by September 18, 2018, an opposition to Plaintiff's memorandum of fees and costs.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to hold Defendants in contempt is granted in part and denied in part;

2. Defendants are held in civil contempt of Court for violating the Stipulated Injunction;

3. Pursuant to the Stipulated Injunction and this Court's authority to impose remedial sanctions for civil contempt, Defendants are sanctioned jointly and severally $500 per violation for the sixty-seven violations to the Stipulated Injunction identified above, for a total of $33,500.00, to be paid to Plaintiff within thirty days of this order;

4. Plaintiff shall file by September 4, 2018, a memorandum of fees and costs with supporting affidavits concerning Plaintiff's enforcement of the Stipulated Injunction, and Defendants may file by September 18, 2018, an opposition to Plaintiff's memorandum of fees and costs.

IT IS SO ORDERED.

Dated:   August 21, 2018      _____

SENIOR  DISTRICT  JUDGE