# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NORTHERN CENTRAL DISTRIBUTING, INC. dba YOSEMITE HOME DECOR,**<br><br>**Plaintiff**<br><br>v.<br><br>**ROCKIE BOGENSCHUTZ, ROCKIE'S CONTAINERS, LLC dba Y DÉCOR and YOSEMITE DECOR,**<br><br>**Defendants** | **CASE NO. 1:17-cv-01351-AWI-EPG**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>(Doc. No. 53) |

Before the Court is a motion for attorneys' fees and costs ("Fees Motion") from Plaintiff Northern Central Distributing, Inc. ("YHD" or "Plaintiff"). See Doc. No. 53. Plaintiff asks the Court to award it $39,917.46 in attorneys' fees[1] and $225.18 in costs. Plaintiff claims that these fees and costs were incurred in successfully moving the Court to hold in contempt Defendant Rockie's Containers, LLC dba Y Décor ("Y Décor") and Defendant Rockie Bogenschutz. For the following reasons, the Fees Motion will be partially granted.

## I. Background

Plaintiff is a home décor supplier. So too is Y Decor. One of Y Décor's members is Rockie Bogenschutz.[2] Bogenschutz previously worked for Plaintiff before starting and working

---

[1] In the reply to the Fees Motion, Plaintiff slightly modified the requested fees to $37,473.46.
[2] The publicly-available California Secretary of State Statement of Information (Form LLC-12) filing for Rockie's Containers, LLC, dated November 3, 2017, identified Bogenschutz as a member. *See* https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=201529410014-23152080 (accessed August 17, 2018).

for Y Decor. This case is largely about Y Décor and Bogenschutz (collectively "Defendants") using without authorization Plaintiff's protected property, including Plaintiff's photographs of home décor products and SKUs. In the home décor industry, an SKU is a unique combination of numbers and/or letters used to identify a seller's product.

In October 2017, Plaintiff filed a motion for preliminary injunction against Defendants pursuant to Fed. R. Civ. P. 65 that sought to enjoin Defendants from engaging in certain business practices, including copyright infringement. <u>See</u> Doc. No. 6-2. Specifically, Plaintiff's motion for preliminary injunction sought to enjoin Defendants from (1) using Plaintiff's unique SKUs to market, advertise, or sell home decor products; (2) using Plaintiff's photographs of home décor products; and (3) inserting Plaintiff's product manuals into Defendants' product shipments. Attached to the motion for preliminary injunction were declarations and photographs that purportedly showed Defendants engaging in the aforementioned practices.

A hearing was scheduled on Plaintiff's motion for preliminary injunction, but the hearing never occurred. Instead, Defendants and Plaintiff stipulated to and proposed to the Court a "Stipulation re Preliminary Injunction and Order Thereon," which was essentially a proposed stipulated injunctive order. The Court accepted and adopted the proposed stipulation, and the Court entered the "Stipulated Injunction" on January 8, 2018. <u>See</u> Doc. No. 21; <u>cf.</u> Doc. No. 19.

The Stipulated Injunction orders Defendants to refrain from certain business practices, including using Plaintiff's unique SKUs to market, advertise, or sell home decor products. <u>See</u> Doc. No. 21 (identifying the certain business practices). The Stipulated Injunction also provides that sanctions, penalties, and remedies — including attorneys' fees and costs — may be imposed for future violations of the Stipulated Injunction:

> The parties stipulate and agree that in order to deter any further damage to Plaintiff's business, reputation and goodwill, the parties agree to the following measure of sanctions for the violations of this Order, in addition to any other remedies or penalties the Court deems just and proper for violations of this Court's Order:
>
> a. $500 for each prospective violation of this ORDER by any Defendant or anyone acting in concert with any Defendant having notice of the injunction. <u>Aradia Women's Health Center v. Operation Rescue</u>, 929 F.2d 530, 532 (9th Cir.

1991) (prospective sanctions proper); <u>Institute of Cetacean Research v. Sea Shepherd Conservation Soc.</u>, 774 F.3d 935, 950 (9th Cir. 2014) (party liable for contempt for encouraging or giving non-party means to violate injunction); and

      b. An award of reasonable attorneys' fees and costs to Plaintiff for costs of enforcement of this ORDER upon application to the Court and upon proof of any material violation of this ORDER. <u>Harcourt Brace Jovanovich Legal & Prof. Pub., Inc. v. Multistate Legal Studies, Inc.</u>, 26 F.3d 948, 953 (9th Cir. 1994) (attorney's fees appropriately awarded for civil contempt).

<u>Id.</u> at 5:4-18 (citations in original).[3]

On May 8, 2018, Plaintiff filed a motion to hold Defendants in contempt for violating the Stipulated Injunction. <u>See</u> Doc. No. 27. In the motion — the "Contempt Motion" — Plaintiff argued that Defendants committed approximately 492 violations of the Stipulated Injunction. Of these 492 alleged violations, Plaintiff argued that sixty-seven consisted of Defendants using SKUs covered by the Stipulated Injunction on Defendants' website, y-décor.com; four consisted of Defendants using photographs of lighting fixtures that were allegedly taken from Plaintiff's 2017 product catalog; two consisted of Defendants using the word "Yosemite" on import shipments; and the remainder — 419 of the 492 alleged violations — consisted of Defendants using SKUs covered by the Stipulated Injunction on third-party websites (*i.e.*, websites other than y-décor.com), such as amazon.com, overstock.com, homedepot.com, wayfair.com, and walmart.com.

Plaintiff argued that because of Defendants' foregoing 492 alleged violations of the Stipulated Injunction, Defendants should pay Plaintiff $246,000 pursuant to the Stipulated Injunction, which provides for a $500 sanction per violation of the Stipulated Injunction. Additionally, Plaintiff argued that it "suffered known actual damages in the form of lost sales as a result of Defendants' violations" because a customer canceled a contract with Plaintiff due to being confused by Defendants' use of one of Plaintiff's SKUs. Doc. No. 27-2 at 10. As compensation for that alleged lost sale, Plaintiff claimed that Defendants should pay $1,913 to Plaintiff, which is the amount of the lost sale.

---

[3] Citations to page numbers of documents on file with the Court refer to the ECF page number located in the upper-right corner.

3

The Court granted Plaintiff's motion to hold Defendants in contempt, but only partially. Specifically, the Court found Defendants in contempt of the Stipulated Injunction, but only for the sixty-seven instances wherein Defendants displayed SKUs covered by the Stipulated Injunction on their website, y-décor.com. Based on the Stipulated Injunction's provision for "$500 for each prospective violation," the Court sanctioned Defendants jointly and severally for $500 per violation for the sixty-seven violations, for a total of $33,500.

In the Contempt Motion, Plaintiff also requested an award of $16,872 for attorneys' fees that Plaintiff incurred "in attempting to secure Defendants' compliance with the [Stipulated Injunction]." Doc. No. 27-2 at 11. Plaintiff's requested fees award in the Contempt Motion — $16,872 — did not consist entirely of attorneys' fees that had been actually incurred. Rather, only $12,034.50 of the requested fees award had been incurred as of the Contempt Motion. But Plaintiff explained that it would "incur an estimated $4,837.50 in additional fees attempting to secure Defendants' compliance with the Order after the [Contempt] Motion is filed, including further correspondence with Defendants' counsel, review and analysis of any opposition to the Motion, preparation of Plaintiff's reply to Defendants' opposition, and time spent preparing for and attending any hearing on the [Contempt] Motion." Doc. No. 27-2 at 11. Therefore, based on the $12,034.50 in fees already incurred by Plaintiff and the $4,837.50 in fees estimated to be incurred in the future by Plaintiff, Plaintiff arrived at its request of $16,872 in attorneys' fees.

In the Court's order partially granting the Contempt Motion, the Court acknowledged that "awarding Plaintiff its reasonable attorney's fees and costs is an appropriate remedial award to Plaintiff," but the Court ordered Plaintiff to file a subsequent memorandum of fees and costs with supporting affidavits documenting and explaining Plaintiff's fees and costs expended in relation to the Contempt Motion. <u>See</u> Doc. No. 51. The Court specifically cautioned Plaintiff that "[t]he memorandum should be mindful that [Plaintiff's Contempt Motion] is granted only in part." <u>Id.</u>

After the Court partially granted the Contempt Motion, Plaintiff filed its Fees Motion. <u>See</u> Doc. No. 53.

## II. Plaintiff's Motion

*Plaintiff's Argument*

In the Fees Motion, Plaintiff requests an award of $39,917.46 in attorneys' fees and $225.18 in costs. See Doc. No. 53-1 at 10:13-19. Plaintiff states that four attorneys expended a total of 111.8 hours and one paralegal expended 34 hours. In the Fees Motion, Plaintiff voluntarily reduced these hours, with the attorneys' time reduced to 92.75 hours and the paralegal's time reduced to 4.21 hours.

Plaintiff explains that it voluntarily reduced the paralegal's time to approximately 12% of the original 34 hours because the paralegal's time had been spent searching for and documenting the 492 alleged violations — of which only approximately 14% were found by the Court to constitute contempt. See Doc. No. 53-1 at 8.

As for the 111.8 hours from the attorneys, Plaintiff argues that this time should not be reduced to the same extent as the paralegal's time because "[t]he time expended [by the attorneys] on legal research, drafting and other preparation of the motion and related attorney time to enforce the Stipulated Injunction is the same for one violation as it is for 486 violations" and "all of the work [by the attorneys] was necessary to protect Plaintiff's rights." Id. at 8-9. Plaintiff then explains that it voluntarily reduced the attorney time by approximately 10% — from 111.8 hours to 92.75 hours[4] — "to reflect that the [Contempt Motion] was not granted in whole." Id. at 8.

Plaintiff also argues that it should be awarded "an additional $3,000 in fees to account for the anticipated time needed" to "review Defendants' opposition [to the Fees Motion], prepare any necessary reply to Defendants' opposition, and attend a hearing on this matter." Id. at 9. Plaintiff provides no explanation or calculation for how it arrived at the $3,000 figure.

---

[4] In its Fees Motion, Plaintiff initially reduced the attorneys' time by 10% from 111.8 hours to 102.15 hours. But then in its reply to the Fees Motion, Plaintiff voluntarily reduced the time of one attorney, Justin Thomas, by another 9.4 hours because "Mr. Thomas' time preparing the fee motion should have been reduced given that he had not previously been involved in the matter, and that approximately 10 hours would be appropriate rather than the billed 19.4 because he had to make himself familiar with this complex case, as Ms. Smith was not available to help at the time." Doc. No. 61 at 3.

5

The following table summarizes Plaintiff's requested time and rates:

| Attorney / Paralegal | Years of Experience | Rate | Time | Time Reduced by Plaintiff | Time, Rate, and Fees Requested by Plaintiff |
|---|---|---|---|---|---|
| Stephanie Borchers | 21 years | $390/hour until September 2018 | 46.2 hours | 4.6 hours | 41.6 hours at $390/hour = **$16,224** |
| | | $425/hour since September 2018 | 11.4 hours | 1.4 hours | 10 hours at $425/hour = **$4,250** |
| Marcus DiBuduo | 10 years | $390/hour until September 2018 | 18.5 hours | 1.8 hours | 16.7 hours at $390/hour = **$6,513** |
| | | $405/hour since September 2018 | 3.8 hours | 0.55 hours | 3.3 hours at $405/hour = **$1,336.50** |
| Sydney Smith | 4 years | $250 | 12.5 hours | 1.3 hours | 11.2 hours at $250/hour = **$2,800** |
| Justin Thomas | 5 years | $260 | 19.4 hours | 9.4 hours | 10 hours at $260/hour = **$2,600**[5] |
| Rita Bell | Paralegal | $160 | 34 hours | 29.21 hours | 4.79 hours at $160/hour = **$766.40**[6] |
| n/a | n/a | n/a | n/a | n/a | **$3,000** (for preparing the reply brief) |
| **Total** | | | | | **$37,489.90** |

As for costs, Plaintiff argues that it should be awarded $225.18, which was incurred for photocopies, deliveries, and LexisNexis charges.

For both the fees and costs, Plaintiff submitted copies of the attorneys' billing entries and invoices related to the Contempt Motion and Fees Motion, which Plaintiff's lead attorney, Stephanie Borchers, declared she personally reviewed and believes were reasonably incurred. See Doc. No. 53-2. Ms. Borchers also declared that the foregoing attorney and paralegal rates are in line with the rates for attorneys and paralegals of similar experience, skill, and reputation in Fresno, California. See id.

---

[5] This figure is based on the 9.4 hour reduction to Mr. Thomas' time offered by Plaintiff in its reply. See Doc. No. 61 at 3:4-8.

[6] In the Fees Motion, Plaintiff somehow calculates this total to be $749.96. See Doc. No. 53-1 at 5. Based on the Court's calculations (4.79 hours at $160/hour), the Court believes the correct total is $766.40.

*Defendants' Opposition*

Y Décor and Bogenschutz jointly filed an opposition to the Fees Motion. In the opposition, Defendants argue that Plaintiff's request for attorneys' fees is unreasonable. First, even though Plaintiff only achieved a success rate on the Contempt Motion in the range of 13.7% to 25%, Plaintiff still requests "90% of the fees claimed to have been incurred on the Contempt Motion." Doc. No. 59 at 5. Second, the amount of fees requested by Plaintiff is "nearly 2.5 times more than the $16,872.00 originally sought" by Plaintiff in the Contempt Motion. Id. Third, the amount of fees requested by Plaintiff is "more than three times the fees incurred by" Defendants in opposing the Contempt Motion. Id.

Defendants also argue that several of Plaintiff's attorneys' billed tasks are unreasonable for a variety of reasons, such as: (1) the billed task occurred within the 60-day grace period that Defendants were provided with under the Stipulated Injunction to come into compliance with the Stipulated Injunction; (2) the billed task occurred long before (*e.g.*, two or three months before) Plaintiff prepared the Contempt Motion; (3) the billed task does not reference the Contempt Motion; (4) the billed task relates to alleged violations that did not constitute contempt; (5) the billed task involved "multiple intraoffice attorney conferences"; (6) the billed task took an inordinate and unreasonable amount of time to accomplish, such as spending 49.4 hours preparing the reply to the Contempt Motion; (7) the billed task was inefficient and wasteful because it was necessitated only due to Plaintiff's failure to raise all arguments in the Contempt Motion, such as spending 16.4 hours preparing the supplemental brief to the Contempt Motion; and (8) the billed task was unnecessary, such as spending 5.4 hours "glorying" with clients over the Court's partial grant of the Contempt Motion. See id. at 6-8.

Based on the foregoing, Defendants argue that Plaintiff should be awarded no more than $9,857.99 in fees and $225.18 in costs.

*Discussion*

"Attorneys' fees frequently must be expended to bring a violation of an order to the court's attention." Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985). Accordingly, "the trial court should have the discretion to analyze each contempt case individually and decide whether an

award of fees and expenses is appropriate as a remedial measure." Id.; see also Biocell Labs., Inc. v. Biocell Research Labs., Ltd., 85 F.3d 634 (9th Cir. 1996); Donovan v. Burlington N., Inc., 781 F.2d 680, 682 (9th Cir. 1986).

Here, the fees and costs provision in the Stipulated Injunction states that "the parties agree to . . . [a]n award of reasonable attorneys' fees and costs to Plaintiff for costs of enforcement of this ORDER upon application to the Court and upon proof of any material violation of this ORDER." Doc. No. 21 at 5. This provision was designed to "deter any further damage to Plaintiff's business, reputation and goodwill." Id. Thus, this provision is capable of serving both remedial and coercive purposes. Because Plaintiff was required to expend attorneys' fees and costs to bring Defendants' contempt to the Court's attention, the Court concludes that awarding Plaintiff its reasonable attorneys' fees and costs is an appropriate remedial award.

I. Lodestar

"The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." Van Skike v. Director, Office of Workers' Compensation Programs, 557 F.3d 1041, 1048 (9th Cir. 2009) (quoting City of Burlington v. Dague, 505 U.S. 557, 562 (1992)); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (describing the lodestar as the "most useful starting point for determining the amount of a reasonable fee"). Accordingly, the Court will "calculate an award of attorneys' fees by first calculating the 'lodestar' before departing from it." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 982 (9th Cir. 2008). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Id. at 978.

1. Reasonable time for lodestar

"[A] district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." Van Gerwen v. Guarantee Mutual Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). The fee applicant bears the burden of establishing the reasonableness of the hours expended. Hensley, 461 U.S. at 437; see also Jadwin v. County of Kern, 767 F. Supp. 2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant

bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."). The party opposing the fee applicant has the burden of rebutting that evidence. Camacho, 523 F.3d at 982; see also Jadwin, 767 F. Supp. 2d at 1100 ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.").

Here, some of the attorneys' time was not reasonably expended. First, Plaintiff concedes that 9.4 hours from one attorney, Mr. Thomas, is unreasonable. Additionally, Plaintiff indicates that the time of its paralegal, Ms. Bell — whose billable time was primarily spent scouring the internet and taking screenshots of alleged violations of the Stipulated Injunction — should be reduced by 12% from 34 hours to 4.21 hours to "correspond" with the fact that only 67 of the 492 alleged violations raised in the Contempt Motion were found by the Court to constitute contempt. See Doc. No. 53-1 at 8:9-14. Defendants do not dispute the time reductions of either Mr. Thomas or Ms. Bell. Therefore, 9.4 hours of Mr. Thomas' time and 29.79 hours of Ms. Bell's time is deducted from the lodestar.

Second, multiple billing entries are partially redacted, thereby obscuring to the Court major details about the billed task. As a result, the Court cannot determine the reasonableness of the billed task. On this basis, the following time is deducted from the lodestar:

| Attorney/Paralegal | Date of Entry | Deducted Time |
|---|---|---|
| Stephanie Borchers | 05/09/2018 | 1.7 hours (at $390/hour) |
| Stephanie Borchers | 5/10/2018 | 0.9 hours (at $390/hour) |
| Marcus DiBuduo | 7/5/2018 | 2.0 hours (at $390/hour) |

Third, the Stipulated Injunction provided Defendants with a 60-day grace period to discontinue its use of SKUs covered by the Stipulated Injunction. The 60-day grace period ended on March 9, 2018. Therefore, the Court does not consider work performed prior to March 10, 2018, as reasonably expended for purposes of moving the Court to hold Defendants in contempt. On this basis, the following time is deducted from the lodestar:

| Attorney/Paralegal | Date of Entry | Deducted Time |
|---|---|---|
| Stephanie Borchers | 2/1/2018 | 1.0 hours (at $390/hour) |
| Stephanie Borchers | 3/7/2018 | 1.4 hours (at $390/hour) |

Fourth, it appears that Plaintiff's attorneys spent approximately 48.2 hours preparing the reply to the Contempt Motion. The reply brief consisted of 12 pages of discussion and included several declarations. The Court finds that the time spent on the reply significantly exceeded the reply's value, meaning some of the time was excessive. Additionally, the Court finds that some of the work performed in preparing the reply was redundant. On this basis, the following time is deducted from the lodestar:

| Attorney/Paralegal | Date of Entry | Original Time | Deducted Time | Reason for Deduction |
|---|---|---|---|---|
| Stephanie Borchers | 7/3/2018 | 2.9 hours | 0.9 hours (at $390/hour) | Redundant (*e.g.*, "review all pleadings") |
| Marcus DiBuduo | 7/8/2018 | 2.1 hours | 2.1 hours (at $390/hour) | Excessive (*i.e.*, 39.5 hours spent preparing the reply prior to this billed task) |
| Marcus DiBuduo | 7/9/2018 | 1.9 hours | 1.9 hours (at $390/hour) | Excessive (*i.e.*, 41.6 hours spent preparing the reply prior to this billed task) |
| Stephanie Borchers | 7/9/2018 | 3.7 hours | 3.7 hours (at $390/hour) | Excessive (*i.e.*, 43.5 hours spent preparing the reply prior to this billed task) |

Based on the foregoing, the lodestar time is as follows:

| Attorney/Paralegal | Original Time | Deducted Time | Lodestar Time (*i.e.*, Original Time minus Deducted Time) |
|---|---|---|---|
| Stephanie Borchers | 46.2 hours (at $390/hour) | 9.6 hours (at $390/hour) | 36.6 hours (at $390/hour) |
|  | 11.4 hours (at $425/hour) | 0 hours (at $425/hour) | 11.4 hours (at $425/hour) |
| Marcus DiBuduo | 18.5 hours (at $390/hour) | 6 hours (at $390/hour) | 12.5 hours (at $390/hour) |
|  | 3.8 hours (at $405/hour) | 0 hours (at $405/hour) | 3.8 hours (at $405/hour) |
| Sydney Smith | 12.5 hours | 0 hours | 12.5 hours |
| Justin Thomas | 19.4 hours | 9.4 hours | 10.0 hours |
| Rita Bell | 34 hours | 29.79 hours | 4.21 hours |

With respect to Plaintiff's request for an additional $3,000 for preparing the reply to the Fees Motion, the Court declines the request. The reply was prepared and filed, <u>see</u> Doc. No. 61, but Plaintiff failed to explain how it arrived at the $3,000 figure for preparing the reply, and even if Plaintiff had provided an explanation, $3,000 is too high a charge for the content contained in

1 the four-page reply brief and attached two-page declaration from Ms. Borchers.  Further,
2 presumably there are billing entries associated with the preparation of the reply to the Fees
3 Motion, but Plaintiff did not provide such documentation to the Court.  Therefore, the requested
4 $3,000 is not reasonable and will not be included in the lodestar.

The Court is not persuaded by all of Defendants' arguments for why Plaintiff's fees should be reduced to $9,857.99.  First, while it may be true that Plaintiff's attorneys expended significantly more time than Defendants' attorney, this alone does not make Plaintiff's attorneys' time unreasonable.  It is true that a comparison of the time expended by Plaintiff's attorneys and Defendants' attorney may provide a "useful guide in evaluating the appropriateness of the time claimed," but it is also true that "comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party . . . does not necessarily indicate whether the hours expended by the party seeking fees were excessive because numerous factors can cause the prevailing party to have spent more time than the losing party."  <u>Democratic Party of Washington State v. Reed</u>, 388 F.3d 1281, 1287 (9th Cir. 2004).

Second, the Court does not find the conferences held amongst Plaintiff's attorneys and with their clients to be unreasonable.  Conferences amongst collaborating attorneys' and their clients are standard and necessary in litigation, and the number, length, and frequency of the conferences held by Plaintiff's attorneys were not excessive.

Third, the time spent preparing the supplemental briefing to the Contempt Motion was not unreasonable.  It is true that the supplemental briefing was necessitated mainly because Plaintiff's reply to the Contempt Motion raised new issues, but the newly raised issues were pertinent to the Court's adjudication of the Contempt Motion.  Additionally, the Court expressly permitted Plaintiff to file the supplemental briefing.  <u>See</u> Doc. No. 45.  To the extent that the supplemental briefing pertained to alleged violations of the Stipulated Injunction that did not constitute contempt, this consideration will be addressed below when the Court evaluates the "degree of success" lodestar adjustment.

Fourth, while it is true that Plaintiff requested $16,872.00 for fees in the Contempt Motion, this alone does not mean that Plaintiff's current request is unreasonable.  After the Contempt

Motion was prepared and filed, Plaintiff's attorneys spent additional time preparing a few relatively uncomplicated briefs — namely, the reply to the Contempt Motion, the supplemental brief to the Contempt Motion, the Fees Motion, and the reply to the Fees Motion. It was not unreasonable for Plaintiff's attorneys to do so, and Plaintiff now seeks the additional fees it incurred as a result.

With that said, however, the Court finds it disagreeable that after Plaintiff originally requested fees in the amount of $16,872.00 in the Contempt Motion — of which $4,837.50 was intended to cover the costs of preparing Plaintiff's reply to the contempt motion and attending a hearing (that never occurred) on the Contempt Motion, amongst other billable tasks — Plaintiff has now requested an additional $23,045.46[7] for fees apparently expended in preparing the reply to the Contempt Motion, the supplemental brief to the Contempt Motion, and the Fees Motion. By now requesting an award of $23,045.67 *in addition* to the requested $16,872.00 in the Contempt Motion, Plaintiff appears to have not taken the Court seriously when the Court instructed Plaintiff to "be mindful" when requesting attorneys' fees that the Contempt Motion was granted only in part. See Doc. No. 51 at 25. The excessiveness of Plaintiff's current request will be trimmed further, as discussed *infra*.

### 2. Reasonable rate for lodestar

The Court "must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount." Gonzalez v. City of Maywood, 729 F.3d at 1196, 1205 (9th Cir. 2013). The reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'"). The "relevant legal community" is the forum district, and the local hourly rate for similar work should normally be employed. Gonzalez, 729 F.3d at 1205; Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010). The fee applicant bears the burden of producing satisfactory evidence that the

---

[7] This figure is based on the requested fees award of $39,917.46 in the Fees Motion.

requested rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11. "[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." Hiken v. Dep't of Def., 836 F.3d 1037, 1044 (9th Cir. 2016).

Here, Ms. Borchers declared that the rates of Plaintiff's attorneys and paralegal are comparable to the prevailing market rates for attorneys and paralegals of comparable experience, expertise, and reputation in Fresno, California. See Doc. No. 53-2. Defendant has not disputed Ms. Borchers' declaration, nor has Defendant argued that Plaintiff's rates are unreasonable. Accordingly, the Court finds that Plaintiff's rates are reasonable and will use those rates to calculate the lodestar.

### 3. Calculation of lodestar

"The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Camacho, 523 F.3d at 978. The following table provides the calculation of the lodestar:

| Attorney/Paralegal | Lodestar Calculation |
|---|---|
| Stephanie Borchers | 36.6 hours at $390/hour = $14,274 |
| | 11.4 hours at $425/hour = $4,845 |
| Marcus DiBuduo | 12.5 hours at $390/hour = $4,875 |
| | 3.8 hours at $405/hour = $1,539 |
| Sydney Smith | 12.5 hours at $250/hour = $3,125 |
| Justin Thomas | 10.0 hours at $260/hour = $2,600 |
| Rita Bell | 4.21 hours at $160/hour = $673.60 |
| **Total** | **$31,931.60** |

### II. Lodestar adjustments

While the lodestar figure is presumptively reasonable, "a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." Camacho, 523 F.3d at 982. These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the

1 attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or
2 contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount
3 involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10)
4 the 'undesirability' of the case; (11) the nature and length of the professional relationship with the
5 client; and (12) awards in similar cases. Kerr, 526 F.2d at 70; see also Ballen v. City of Redmond,
6 466 F.3d 736, 746 (9th Cir. 2006) ("After making that computation, courts then assess whether it
7 is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve
8 factors.").

Here, Plaintiff argues that the lodestar should be adjusted downwards by 10% for the attorney time. By contrast, Defendants argue that the lodestar should be adjusted downwards far more because only 67 or approximately 14% of the 492 alleged violations raised in the Contempt Motion were found to constitute contempt. Ultimately, Plaintiff and Defendant agree that a "degree of success" adjustment should be made to the lodestar.

### 1. Degree of success adjustment to lodestar

"[T]he most critical factor in determining the reasonableness of a fee award" is "the degree of success obtained." Bravo v. City of Santa Maria, 810 F.3d 659, 666 (9th Cir. 2016). "It is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the 'extent of success' and the amount of the fee award." Id.

Here, of the 492 alleged violations raised in Plaintiff's Contempt Motion, only 67 or 14% constituted contempt. Therefore, because the vast majority of the Contempt Motion was denied, the Court finds that a downward adjustment is warranted.

Plaintiff acknowledges that the Court denied the vast majority of the Contempt Motion, and that is why Plaintiff proposes reducing the time of the paralegal by approximately 88% and reducing the time of the attorneys by 10%. See Doc. No. 53-1 at 8 (Plaintiff proposing a reduction "to reflect that the motion was not granted in whole"). The Court understands the reasoning behind Plaintiff's proposal to reduce the paralegal's time to approximately 12%: it roughly harmonizes with the fact that only approximately 14% of the alleged violations in the Contempt Motion were found to constitute contempt.

1    But the Court does not understand how Plaintiff arrived at the 10% figure for the attorneys'
2    time reduction.  Plaintiff explains that the attorneys' time should not be reduced to the same extent
3    as the paralegal's time by invoking the principle of economies of scale.  States Plaintiff, "[t]he
4    time expended on legal research, drafting and other preparation of the motion and related attorney
5    time to enforce the Stipulated Injunction is the same for one violation as it is for 486 violations"
6    and "all of the work was necessary to protect Plaintiff's rights."  Id. at 8-9.  The Court accepts
7    Plaintiff's premise: preparing the Contempt Motion would have taken meaningful time even if the
8    Contempt Motion raised only one alleged violation of the Stipulated Injunction.  But the Court
9    will not ride this premise to the illogical extreme that Plaintiff advocates for.  To say that the
10   attorneys' time would be "*the same* for one violation as it [would be] for 486 violations" is false
11   hyperbole or, worse yet, an admission that Plaintiff's attorneys did not carefully analyze, research,
12   and argue whether *each* of the 492 alleged violations raised in the Contempt Motion actually
13   constituted contempt — as at least one of the attorneys was required to do.  See Fed. R. Civ. P
14   11(b) (outlining the obligations an attorney is under when making representations to the court in
15   court filings, the violation of which can result in sanctions).

16       Plaintiff's attorneys — not only the paralegal — should have spent meaningful time
17   analyzing and discussing the evidentiary documentation attached to the Contempt Motion that
18   pertained to *all* 492 alleged violations.  The Court has a taste of how much time that review must
19   have taken because the Court reviewed and analyzed every single page of documentation attached
20   to the Contempt Motion and reply — somewhere in the ballpark of 914 pages.  In short, there was
21   a strong correlation between the number of alleged violations raised in the Contempt Motion and
22   the length of Plaintiff's briefs and the volume of attached exhibits.

23       Another problem with Plaintiff's proposed 10% figure is that it has no bearing to the facts
24   here.  Similarly, Plaintiff provided no explanation for how it arrived at the 10% figure, leaving the
25   Court to surmise that the figure was selected arbitrarily.

26       Here, a 60% reduction of the attorneys' time is reasonable.  It is reasonable because it takes
27   into account two competing considerations: one on hand, the economies of scale inherent in
28   Plaintiff's Contempt Motion; and on the other hand, the fact that Plaintiff's attorneys spent

significant time advancing an argument (namely, that *all* 492 alleged violations constituted contempt) that was overwhelmingly rejected by the Court. Both of these considerations are evident to the Court through a review of the billing entries and submitted briefs (*e.g.*, the Contempt Motion) and exhibits. To the extent that the Court does not know the precise amount of time that Plaintiff's attorneys spent working on the 425 unsuccessful alleged violations, this is entirely because the billing entries failed to provide sufficient specificity and detail. Nonetheless, based on the Court's experience analyzing the hundreds of pages briefs and exhibits corresponding to Plaintiff's rejected argument, the Court finds that a 60% reduction bears a reasonable correlation to the degree of success obtained by Plaintiff and the economies of scale inherent in advancing Plaintiff's partially successful, partially unsuccessful Contempt Motion.

Accordingly, in applying the 60% reduction to the lodestar for attorneys' fees, the Court will award Plaintiff $13,176.60 in fees[8] and $225.18 in costs.[9]

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's Fees Motion is granted in part and denied in part;
2. Plaintiff is awarded $12,866.24 in fees and $225.18 in costs, which are to be paid jointly and severally by Defendants to Plaintiff within sixty days of this order.

IT IS SO ORDERED.

Dated:   December 12, 2018

_____
SENIOR DISTRICT JUDGE

---

[8] This figure is a total of the attorneys' fees reduced by 60% — $12,503 — plus the paralegal's fees — $673.60 — which had already been adjusted by Plaintiff's proffered 88% downward adjustment.

[9] Defendants make no objection to the reasonableness of the requested costs, and Defendants, along with Plaintiff, requested that Plaintiff be awarded $225.18 in costs. See Doc. No. 59 at 8.

16