# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NORTHERN CENTRAL DISTRIBUTING, INC. dba YOSEMITE HOME DECOR,** <br><br> **Plaintiff** <br><br> v. <br><br> **ROCKIE BOGENSCHUTZ, ROCKIE'S CONTAINERS, LLC dba Y DÉCOR and YOSEMITE DECOR,** <br><br> **Defendants** | CASE NO. 1:17-cv-01351-AWI-EPG <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SECOND CONTEMPT ORDER** <br><br> (Doc. No. 63) |

Before the Court is Plaintiff Northern Central Distributing, Inc.'s second motion to hold Defendants in contempt (hereafter "Second Contempt Motion") for violating the Court's prior order, the "Stipulation and Order re Preliminary Injunction" (hereafter "Stipulated Injunction"). See Doc. No. 21 (Stipulated Injunction). The Stipulated Injunction ordered Defendants to refrain from certain practices, including using certain stock keeping unit ("SKU") numbers in Defendants' business. For the reasons discussed below, the Court will deny Plaintiff's motion.

## I. Background

Plaintiff is a home décor supplier. So too is Defendant Rockie's Containers, LLC dba Y Décor ("Y Décor"). One of Y Décor's members is Defendant Rockie Bogenschutz. Bogenschutz previously worked for Plaintiff before starting and working for Y Decor. This lawsuit is largely about Y Décor and Bogenschutz (collectively "Defendants") using without authorization

Plaintiff's protected property, including Plaintiff's SKUs. In the home décor industry, an SKU is a unique combination of numbers and/or letters used to identify a seller's product.

The events and facts giving rise to Plaintiff's Second Contempt Motion are as follows.

**1.     Plaintiff filed a motion for preliminary injunction**

In October 2017, Plaintiff filed a motion for preliminary injunction against Defendants pursuant to Fed. R. Civ. P. 65. See Doc. No. 6-2. The motion sought to enjoin Defendants from engaging in certain business practices, including using Plaintiff's unique SKUs and photographs to market, advertise, or sell Defendants' home decor products.

**2.     The Court issued the Stipulated Injunction**

A hearing was scheduled on Plaintiff's motion for preliminary injunction, but the hearing never occurred. Instead, Defendants and Plaintiff stipulated to and proposed to the Court a "Stipulation re Preliminary Injunction and Order Thereon," which was essentially a proposed stipulated injunctive order. The Court accepted and adopted the proposed stipulation in January 2018; hence the Stipulated Injunction. See Doc. No. 19 (Stipulation Re Preliminary Injunction and Order Thereon); Doc. No. 21 (Stipulated Injunction).

The Stipulated Injunction orders Defendants to refrain from certain business practices, including using Plaintiff's unique SKUs:

> 1. Immediately refrain from using any stock keeping unit, model, or product identifier ("SKU") which is identical to a SKU being used by Plaintiff on or in connection with the same, similar or competitive home fixture, furnishing or décor product. Additionally, with the exception of the SKUs listed in Exhibit A, within 60 days of entry of this Order, Defendants will refrain from using any SKU which is similar to a SKU which is in active use by Plaintiff on or in connection with the same, similar or competitive home fixture, furnishing or décor product. For the purpose of this provision, a SKU is "similar" if it has 3 or more consecutive numbers or letters that are the same as consecutive numbers or letters in a SKU being used by Plaintiff. For the purpose of this Order Plaintiff may prove "active use" of a SKU by establishing Plaintiff has ordered, received, sold or distributed the referenced home fixture, furnishing or décor product on or after June 1, 2017.

Doc. No. 21 at ¶ 1 (emphasis added).

The Stipulated Injunction also states that Defendants must be provided with both notice of any alleged SKU violation and then ten days from the date of the notice to correct the violation. States the Stipulated Injunction, "Defendants shall act in good faith to comply with this provision

within 60 days, <u>but upon notice of any violation of this provision Defendants shall have 10 days to correct the violation</u>." Id. (emphasis added).

The Stipulated Injunction also provides that sanctions, remedies, or penalties may be imposed for future violations of the Stipulated Injunction:

> The parties stipulate and agree that in order to deter any further damage to Plaintiff's business, reputation and goodwill, the parties agree to the following measure of sanctions for the violations of this Order, in addition to any other remedies or penalties the Court deems just and proper for violations of this Court's Order:
>
> a. $500 for each prospective violation of this ORDER by any Defendant or anyone acting in concert with any Defendant having notice of the injunction. Aradia Women's Health Center v. Operation Rescue, 929 F.2d 530, 532 (9th Cir. 1991) (prospective sanctions proper); Institute of Cetacean Research v. Sea Shepherd Conservation Soc., 774 F.3d 935, 950 (9th Cir. 2014) (party liable for contempt for encouraging or giving non-party means to violate injunction); and
>
> b. An award of reasonable attorneys' fees and costs to Plaintiff for costs of enforcement of this ORDER upon application to the Court and upon proof of any material violation of this ORDER. Harcourt Brace Jovanovich Legal & Prof. Pub., Inc. v. Multistate Legal Studies, Inc., 26 F.3d 948, 953 (9th Cir. 1994) (attorney's fees appropriately awarded for civil contempt).

Id. at 5:4-18 (citations in original).

### **3.** **Plaintiff notified Defendants about Defendants' violations of the Stipulated Injunction**

Sixty-five days after the Court issued the Stipulated Injunction, March 15, 2018, Plaintiff's counsel, Stephanie Borchers, emailed Defendants' counsel, Russell Ryan. In the email, Ms. Borchers said Defendants were violating the Stipulated Injunction because Ms. Borchers found multiple webpages displaying SKUs and photographs covered by the Stipulated Injunction. Ms. Borchers identified a few webpages that she claimed violated the Stipulated Injunction; and some of the webpages were from y-décor.com and others were from third-party retail websites, including amazon.com and walmart.com. Ms. Borchers implied in her email that y-décor.com was a business website used and controlled by Defendants. Ms. Borchers said she would seek penalties for Defendants' violations of the Stipulated Injunction if the violations were not cured.

Eleven days later, March 26, 2018, Ms. Borchers emailed Mr. Ryan and wrote, "no changes to the website that I'm seeing." Doc. No. 27-3 at Ex. 5. In the email, Ms. Borchers identified another webpage from y-décor.com that purportedly displayed one of Plaintiff's

3

1 photographs covered by the Stipulated Injunction. Ms. Borchers said she would pursue a motion for contempt if the photographs did not come down from the websites immediately. Ms. Borchers also acknowledged that Defendants may not control the content displayed on the third-party websites.

On April 4, 2018, Mr. Ryan emailed Ms. Borchers and said that he should be able to talk with Ms. Borchers the following week about Defendants' alleged violations to the Stipulated Injunction.

On April 6, 2018, Ms. Borchers emailed Mr. Ryan. In the email, Ms. Borchers said the issue of the violations was an issue that Bogenschutz needed to handle, not Mr. Ryan. Ms. Borchers said she was considering bringing a motion to hold Defendants in contempt.

Twenty days later, April 26, 2018, Ms. Borchers gave Mr. Ryan a letter that identified over 100 SKUs. In the letter, Ms. Borchers said the SKUs were being used by Defendants in violation of the Stipulated Injunction. Ms. Borchers said actual damages had been suffered by Plaintiff due to Defendants' violations of the Stipulated Injunction. Ms. Borchers said she would file <u>in eleven days</u> an application for an order to show cause why Defendants should not be held in contempt for violating the Stipulated Injunction.

On May 7, 2018, a paralegal working for Ms. Borchers went online and took hundreds of screenshots of webpages that displayed SKUs purportedly protected by the Stipulated Injunction. Some of the webpages came from y-décor.com.

**4.** **Plaintiff filed its First Contempt Motion**

On May 8, 2018, Plaintiff filed a motion to hold Defendants in contempt for violating the Stipulated Injunction. See Doc. No. 27. In the motion — the "First Contempt Motion" — Plaintiff argued that Defendants committed approximately 492 violations of the Stipulated Injunction. Of these 492 alleged violations, Plaintiff argued that sixty-seven consisted of Defendants using SKUs covered by the Stipulated Injunction on Defendants' website, y-décor.com.

/ / /

1  **5.     The Court held Defendants in contempt for violating the Stipulated Injunction**

         On August 21, 2018, the Court partially granted Plaintiff's First Contempt Motion. See
Doc. No. 51. Specifically, the Court found and held Defendants in contempt of the Stipulated
Injunction because Defendants displayed on their website, y-décor.com, sixty-seven SKUs
protected by the Stipulated Injunction. Based on the Stipulated Injunction's provision for "$500
for each prospective violation," the Court sanctioned Defendants jointly and severally for $500 per
violation for the sixty-seven violations, for a total of $33,500.

**6.     Plaintiff then observed fourteen protected SKUs displayed on Defendants' website**

         After the Court issued the order partially granting Plaintiff's First Contempt Motion and
holding Defendants in contempt, Ms. Borchers went online and performed a "spot check" of
Defendants' website, y-décor.com, to investigate whether the website still displayed protected
SKUs in violation of the Stipulated Injunction. Ms. Borchers declared that in doing so, she saw
"continued SKU violations" on Defendants' website. Doc. No. 63-2 at ¶ 8.

         Between September 25, 2018, and October 4, 2018, a paralegal working for Ms. Borchers,
Sean Petersen, went online to Defendants' website, y-décor.com, and observed the website
displaying fourteen SKUs protected by the Stipulated Injunction. See Doc. No. 63-3. Mr.
Peterson took screenshots of the fourteen SKUs displayed on Defendants' website. The fourteen
SKUs or "similar" versions of the SKUs, as the term "similar" is defined in the Stipulated
Injunction,[1] had been part of the group of sixty-seven SKUs previously found by the Court (in its
order partially granting Plaintiff's First Contempt Motion) to be protected by the Stipulated
Injunction and used by Defendants in violation of the Stipulated Injunction.

         On October 12, 2018, and October 26, 2018, Mr. Peterson again observed the fourteen
protected SKUs displayed on Defendants' website. Based on the fourteen protected SKUs
displayed on Defendants' website, Plaintiff filed a motion to hold Defendant in contempt. That
motion — the Second Contempt Motion — is now before the Court. See Doc. No. 63.

---

[1] The Stipulated Injunction defines "similar" as follows: "For the purpose of this provision, a SKU is 'similar' if it has 3 or more consecutive numbers or letters that are the same as consecutive numbers or letters in a SKU being used by Plaintiff." Doc. No. 21 at ¶ 1.

## II. Plaintiff's Second Contempt Motion

**1. Plaintiff's argument**

Plaintiff argues that Defendants violated the Stipulated Injunction, yet again. Specifically, Plaintiff argues that Defendants committed fourteen violations of the Stipulated Injunction by displaying the fourteen protected SKUs on Defendants' website, y-décor.com. To support this argument, Plaintiff provided the Court with screenshots of Defendants' website, y-décor.com, and the screenshots show the fourteen protected SKUs displayed on Defendants' website in conjunction with home décor products. See Doc. No. 63-3. Plaintiff argues that because of these fourteen violations, Defendants should pay Plaintiff a sanction of $7,000 pursuant to the Stipulated Injunction, which expressly provides for a $500-per-violation sanction.

Plaintiff also argues that because Defendants continued to violate the Stipulated Injunction after the Court partially granted the First Contempt Motion and held Defendants in contempt, Defendants should pay an additional sanction in the amount of $77,000. This amount, according to Plaintiff, represents a $7,000-per-week sanction for the eleven weeks between the date when the Court partially granted the First Contempt Motion and the date when Plaintiff's filed their Second Contempt Motion. Plaintiff argues that this $77,000 sanction is required because "Defendants do not appear to have been sufficiently coerced by the previous $33,500 fine" that was imposed when the Court previously found Defendants in contempt for violating the Stipulated Injunction. Doc. No. 63-1 at 7.

Plaintiff also argues that Defendants should pay Plaintiff's attorney's fees and costs in bringing the Second Contempt Motion.

**2. Defendants' argument**

Y Décor and Bogenschutz jointly filed an opposition to the Second Contempt Motion. See Doc. No. 67. The opposition argues that Defendants should not be held in contempt for essentially four reasons. First, Defendants have not "knowingly" violated the terms of the Stipulated Injunction with respect to the fourteen protected SKUs. Doc. No. 67 at 3. Second, after the Court partially granted Plaintiffs' First Contempt Motion in August 2018, Defendants have never used the fourteen protected SKUs to sell Defendants' products. Third, to the extent that the fourteen

6

1 protected SKUs have been used to sell products by Defendants' associated third-parties — such as
2 Amazon, Overstock.com, and Home Depot — Defendants have not controlled the third-parties
3 and Defendants are not responsible for the third-parties' use of the SKUs, whatever that use may
4 be. Fourth, because Defendants were previously sanctioned by the Court for using the fourteen
5 protected SKUs (which were part of the group of sixty-seven protected SKUs that were at issue in
6 the First Contempt Motion), Defendants cannot be sanctioned a second time for using the fourteen
7 protected SKUs. To support this last contention, Defendants cite to the Stipulated Injunction,
8 which provides for a $500 sanction "for each prospective violation" of the Stipulated Injunction.
9 Doc. No. 21 at 5:8-13 (emphasis added).

### III. Discussion

**1.   Legal standard**

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 945 (9th Cir. 2014). When there has been contempt, a court can levy contempt sanctions pursuant to its inherent powers. Cooke v. United States, 267 U.S. 517, 539 (1925). The inherent powers of federal courts are those that "are necessary to the exercise of all others." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)). "The district court has wide latitude in determining whether there has been contemptuous defiance of its order." Hook v. Arizona Dep't of Corr., 107 F.3d 1397, 1403 (9th Cir. 1997). "The most common utilization of inherent powers is a contempt sanction levied to 'protect the due and orderly administration of justice' and 'maintain' the authority and dignity of the court." Primus Auto. Fin. Servs., Inc., 115 F.3d at 648 (quoting Cooke, 267 U.S. at 539).

In addition to the Court's inherent powers, Congress gave the Court the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401; see also United States v. Powers, 629 F.2d 619, 624 (9th Cir. 1980).

1       For issuance of a contempt order to be proper, the party alleging contempt must establish
"(1) that [the accused party] violated the court order, (2) beyond substantial compliance, (3) not
based on a good faith and reasonable interpretation of the order, (4) by clear and convincing
evidence." Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth., 564 F.3d 1115,
1123 (9th Cir. 2009) (citing In re Dual–Deck Video Cassette Recorder Antitrust Litig., 10 F.3d
693, 695 (9th Cir. 1993)). Additionally, the violated order must be "specific and definite." FTC v.
Enforma Natural Prods., Inc., 362 F.3d 1204, 1211 (9th Cir. 2004).

      "A contemnor in violation of a court order may avoid a finding of civil contempt only by
showing it took all reasonable steps to comply with the order." Kelly v. Wengler, 822 F.3d 1085,
1096 (9th Cir. 2016). "If a violating party has taken 'all reasonable steps' to comply with the
court order, technical or inadvertent violations of the order will not support a finding of civil
contempt." Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986) (citations
omitted). But "[f]ailure to comply need not be intentional" in order for a contempt order to be
proper. Id. at 1379 (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); Perry v.
O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985)).

      Additionally, an alleged contemnor may defend against a finding of contempt by
demonstrating a present inability to comply. See United States v. Ayres, 166 F.3d 991, 994 (9th
Cir. 1999) (citing United States v. Rylander, 460 U.S. 752, 757 (1983)). The burden of showing
the inability to comply falls on the alleged contemnor. National Labor Relations Board v. Trans
Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir.1973) ("[O]ne petitioning for an
adjudication of civil contempt does not have the burden of showing that the respondent has the
capacity to comply."). "Ability to comply is the crucial inquiry, and a court should weigh all the
evidence properly before it determines whether or not there is actually a present ability to obey."
Ayres, 166 F.3d at 994 (citations omitted).

**2.**     **Failure to comply with the notice provision of the Stipulated Injunction**

      The Stipulated Injunction provides that if Defendants are discovered to be in violation of
the Stipulated Injunction's SKU provision, then Defendants must be provided with both notice of
the violation and ten days to correct the violation. Doc. No. 21 at ¶ 1.

8

Plaintiff is clearly aware of this "notice and ten-day" requirement. In Plaintiff's First Contempt Motion, Plaintiff emphasized to the Court that Plaintiff had complied with the requirement. Specifically, Plaintiff asserted that Ms. Borchers gave Mr. Ryan a ten-day notice letter on April 26, 2018, and in that letter Ms. Borchers identified the SKUs that Defendants were allegedly using in violation of the Stipulated Injunction. Ms. Borchers began her letter by stating, "Let this letter serve as the 10-day notice of violations," and Ms. Borchers concluded her letter by stating that she would file with the Court <u>in eleven days</u> an application for an order to show cause why Defendants should not be held in contempt for violating the Stipulated Injunction. Doc. No. 27-3 at 24-29. Then, on May 8, 2018 — <u>i.e.</u>, twelve days after Ms. Borchers sent her letter to Mr. Ryan — Plaintiff filed the First Contempt Motion. Moreover, when the Court partially granted the First Contempt Motion, the Court specifically highlighted the fact that Plaintiff had complied with the notice and ten-day requirement of the Stipulated Injunction. <u>See, e.g.</u>, Doc. No. 51 at 15 n.8 ("Plaintiff's counsel's letter from April 26, 2018, began the running of the ten-day notice period.").

But with respect to the fourteen SKU violations alleged in Plaintiff's Second Contempt Motion, Plaintiff has failed to satisfy the notice and ten-day requirement. Plaintiff did not provide the Court with any evidence showing that Plaintiff provided Defendants with proper notice of the fourteen SKU violations and ten days to correct the violations. Instead, Plaintiff argued that the notice and ten-day requirement was satisfied when, first, Plaintiff provided notice to Defendants of the violations that were at issue in the First Contempt Motion and, second, when the Court issued the order partially granting Plaintiff's First Contempt Motion and holding Defendants in contempt for the sixty-seven SKU violations, fourteen of which are again at issue in the Second Contempt Motion.

The Court is not persuaded by Plaintiff's argument, which attempts to liberally construe the Stipulated Injunction's notice requirement.[2] The notice and ten-day provision of the Stipulated

---

[2] Although the Stipulated Injunction was negotiated, stipulated to, and proposed to the Court by the parties, the Stipulated Injunction is nevertheless an order of this Court, and this Court is in the best position to interpret its own orders. <u>JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.</u>, 359 F.3d 699, 705 (4th Cir. 2004) ("When a district court's decision is based on an interpretation of its own order, our review is even more deferential because district courts are

9

Injunction is intended to serve an important purpose. Namely, the provision intends for Plaintiff to communicate with Defendants about discovered SKU violations and, if possible, reach an extrajudicial resolution of an alleged violation <u>before</u> Plaintiff seeks (at least ten days later) the Court's involvement. In this way, the notice and ten-day provision of the Stipulated Injunction is similar to the multiple meet-and-confer rules that are highly-valued in the federal district court system because they protect the Court's limited judicial resources. <u>See</u> Fed. R. Civ. P. 26(c)(1) (meet-and-confer rule for protective orders against discovery requests); Fed. R. Civ. P. 26(a)(1) (meet-and-confer rule for orders compelling discovery); <u>see also</u> Fed. R. Civ. P. 11(c) (21-day notice requirement for Rule 11 motions for sanctions); <u>Nevada Power Co. v. Monsanto Co.</u>, 151 F.R.D. 118, 120 (D. Nev. 1993) ("The purpose of this rule is simple: to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through promotion of informal, extrajudicial resolution of discovery disputes.") (discussing the District of Nevada's local meet-and-confer rule for discovery motions).

It is true, as Plaintiff points out, that Plaintiff previously notified Defendants of the fourteen SKU violations — in conjunction with dozens of other alleged violations — before Plaintiff filed the First Contempt Motion. But the Court has adjudicated the First Contempt Motion, and in so doing, the Court wiped the slate clean for purposes of the notice and ten-day requirement. This means that if Defendants are in violation of the Stipulated Injunction's SKU provision after the Court adjudicated the First Contempt Motion, then Plaintiff is required to provide Defendants with a new notice of the alleged SKU violations, even if some of the alleged violations were previously at issue in the First Contempt Motion. The notice provided to Defendants for purposes of the First Contempt Motion cannot be reused by Plaintiff for purposes of the Second Contempt Motion.

Here, because Plaintiff did not provide Defendants with proper notice of the fourteen SKU violations that are at issue in the Second Contempt Motion, the Court concludes that the Second

---

in the best position to interpret their own orders."); <u>see also</u> <u>Griffin v. Gomez</u>, 741 F.3d 10, 25 (9th Cir. 2014) ("Moreover, courts of appeals must defer to a district court's reasonable interpretation of its own order.").

Contempt Motion is not ripe for adjudication pursuant to the notice provision of the Stipulated Injunction.

### 3. Notice is now provided to Defendants

Plaintiff provided undisputed evidence that Defendants displayed fourteen protected SKUs on Defendants website, y-décor.com, in October 2018. By displaying protected SKUs on its website, Defendants were "using" the SKUs in violation of the Stipulated Injunction. See Doc. No. 21 at ¶ 1 (Stipulated Injunction) (ordering that "Defendants will refrain from using any SKU which is similar to a SKU which is in active use by Plaintiff . . . .") (emphasis added). The Court made this point abundantly clear in its order partially granting the First Contempt Motion, wherein the Court held Defendants in contempt for displaying sixty-seven protected SKUs on Defendants' website. See Doc. No. 51.

Defendants provided no explanation, justification, or excuse for why the fourteen protected SKUs were displayed on Defendants' website in October 2018. Defendants merely asserted that neither Defendants nor Defendants' third-party sellers were using the SKUs to sell products. But Defendants totally avoided discussing the fact that the fourteen protected SKUs were displayed on Defendants' website, which the Court has previously concluded constitutes "use" pursuant to the Stipulated Injunction. Id.

The Court will treat this order as providing notice to Defendants concerning the fourteen SKU violations alleged in Plaintiff's Second Contempt Motion.[3] The fourteen protected SKUs are listed in Mr. Petersen's declaration, which was filed in support of Plaintiff's Second Contempt Motion. See Doc. No. 63-3 at 2. The Court will order that Defendants shall file evidence with the Court proving, if possible, that Defendants are not currently using the fourteen protected SKUs in violation of the Stipulated Injunction.

---

[3] The Court's treatment of this order as providing "notice" pursuant to the Stipulated Injunction is limited: the treatment applies only to this order — not the order partially granting Plaintiff's First Contempt Motion — and applies only to the fourteen SKU violations alleged in Plaintiff's Second Contempt Motion.

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's Second Contempt Motion (Doc. No. 63) is **DENIED**;
4. Defendants shall **FILE** by March 11, 2019, evidence proving, if possible, that Defendants are not currently using the fourteen protected SKUs in violation of the Stipulated Injunction, and Plaintiff may file by March 18, 2019, a response to Defendants' filing.

IT IS SO ORDERED.

Dated:   March 1, 2019   _____
                         SENIOR  DISTRICT  JUDGE